WR-31,454-04
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/29/2015 2:07:05 PM
Accepted 6/29/2015 5:30:36 PM
ABEL ACOSTA
CLERK

# Nos. WR-31,454-03 & WR-31,454-04

_____

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

_____

## EX PARTE RODNEY ELNESTO SMILEY, Applicant.

_____

On Application for a Writ of Habeas Corpus

Cause No. C-213-010293-1011284-B
In the 213th District Court from Tarrant County

Cause No. W94-02594-U(A)
In the 291st District Court from Dallas County

_____

## BRIEF FOR THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*JOSEPH P. CORCORAN
Assistant Attorney General
Supervising Attorney
for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

*Lead Appellate Counsel
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

_____

ATTORNEYS FOR THE
TEXAS DEPARTMENT OF CRIMINAL JUSTICE

FILED IN
COURT OF CRIMINAL APPEALS

June 29, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

To assist this Honorable Court in determining disqualification and recusal, the Texas Department of Criminal Justice certifies the following is a complete list of the parties and their attorneys in accordance with Texas Rule of Appellate Procedure 38.1(a).

1.  **Applicant**
    RODNEY ELNESTO SMILEY
    TDCJ-CID No. 693698

2.  **Counsel for Applicant**
    KENNETH NASH
    State Counsel for Offenders
    P.O. Box 4005
    Hunstville, Texas  77342

3.  **Counsel for the State**
    ANDREA JACOBS
    Assistant Criminal District Attorney
    401 West Belknap
    Fort Worth, Texas 76196-0201

4.  **Counsel for the Texas Department of Criminal Justice**
    JOSEPH P. CORCORAN
    Assistant Attorney General
    Texas Bar Number 00793549
    P. O. Box 12548, Capitol Station
    Austin, Texas  78711

5.  **Trial Court Judge**
    JUDGE LOUIS STURNS
    (State habeas proceeding)

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ............................................ ii

TABLE OF CONTENTS ................................................................ iii

INDEX OF AUTHORITIES ............................................................. v

STATEMENT OF THE CASE ........................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ............................... 5

STATEMENT OF THE ISSUES ........................................................ 5

SUMMARY OF THE ARGUMENTS .................................................. 7

ARGUMENT ............................................................................... 11

I.     Since Applicant Was Thrice Reviewed and Denied Release to
       DMS for His DMS-Eligible Offense, There Is Nothing to
       Remediate; the Issue is Moot ........................................... 11

II.    In the Alternative, Because the Initial DMS Vote Was Timely,
       Applicant's Rights Could Not Have Been Violated ...................... 13

       A.     Both TDCJ and the Board have independent legal
              authority to interpret Texas statutes related to
              their core, legislatively-created functions,
              including the interpretation of laws to determine
              how to calculate sentences and to institute parole
              review procedures ............................................... 13

B.      Applicant's assumption that the initial DMS vote was untimely, exposes an interpretative tension within the statutory provisions creating the DMS procedure, and creates a cascade of potential absurdities. ........................................................... 15

C.      Applicant's legal rights could not have been violated with respect to his DMS sentence, because the Legislature limited the force and effect of good-time to only his conviction for theft—at least while he was serving his controlling, concurrent sentence for theft ....................................................... 28

III.    Because Applicant's Theft Offense Ceased to Be the Controlling Sentence As of the Moment He Became Presumptively Eligible for MS Release Thereto, Applicant's Rights Could Not Have Been Violated ........................................... 35

PRAYER FOR RELIEF ................................................................... 40

CERTIFICATE OF SERVICE ......................................................... 42

CERTIFICATE OF COMPLIANCE WITH TEXAS RULE OF APPELLATE PROCEDURE 9.4 ...................................................... 43

# INDEX OF AUTHORITIES

## Cases

*Ex parte Bohannan*, 350 S.W.3d 116 (Tex. Crim. App. 2011) ................ 12

*Ex parte Canada*, 754 S.W.2d 660 (Tex. Crim. App. 1988) ................... 24

*Ex parte Cowan*, 171 S.W.3d 890 (Tex. Crim. App. 2005) ..................... 31

*Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008) ............. 16, 34

*Ex parte Geiken*, 28 S.W.3d 553 (Tex. Crim. App. 2000) ......................... 1

*Ex parte Hale*, 117 S.W.3d 866 (Tex. Crim. App. 2003) ................... 19, 25

*Ex parte Keller*, 173 S.W.3d 492 (Tex. Crim. App. 2005) ................. 14, 15

*Ex parte Mabry*, 137 S.W.3d 58 (Tex. Crim. App. 2004) .................... 2, 36

*Ex parte Retzlaff*, 135 S.W.3d 45 (Tex. Crim. App. 2004) ............. passim

*Ex parte Ruthart*, 980 S.W.2d 469 (Tex. Crim. App. 1998) ........ 17, 28, 33

*Ex parte Schroeter*, 958 S.W.2d 811 (Tex. Crim. App. 1997) ................ 18

*Ex parte Smiley*, No. WR-31,454-03 (Tex. Crim. App. Nov. 26, 2014) . 4, 6

*Ex parte Thompson*, 173 S.W.3d 458 (Tex. Crim. App. 2005) ................. 1

*Falkner v. Southwestern Sav. and Loan Ass'n of Houston*, 320 S.W.2d
164 (Tex. Civ. App.—Austin 1958) ....................................................... 15

*Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640 (Tex. App.—Austin 2004) ....................................................................................... 14

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ......................................... 20, 21

*Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.*, 971 S.W.2d 439 (Tex. 1998).............................................................. 6

*Public Utility Com'n of Texas v. City Public Service Bd. of San Antonio*, 53 S.W.3d 310 (Tex. 2001)....................................................... 13

*State v. Public Utility Com'n of Texas*, 883 S.W.2d 190 (Tex. 1994) ..... 15

*Texas Advocates Supporting Kids with Disabilities v. Texas Educ. Agency*, 112 S.W.3d 234 (Tex. App.—Austin 2003)........................... 13

*Warren v. State*, 652 S.W.2d 779 (Tex. Crim. App. 1983)....................... 6

## Statutes

H.B. 1433 Comm. Report (Amended), 74th Leg. (April 11, 1995).......... 19

Tex. Code Crim. Proc. art. 42.18 § 7 ..................................................... 14

Tex. Code Crim. Proc. art. 42.18 § 8(c) ................................................... 1

Tex. Gov't Code § 494.001 ....................................................................... 14

Tex. Gov't Code § 498.001(5).................................................................... 30

Tex. Gov't Code § 498.003(a).................................................................... 30

Tex. Gov't Code § 508.001(5) .................................................. 16, 17

Tex. Gov't Code § 508.143(b) ....................................................17

Tex. Gov't Code § 508.147(a) ............................................... 16, 31

Tex. Gov't Code § 508.147(b) ......................................... 17, 31, 37

Tex. Gov't Code § 508.149 ........................................................26

Tex. Gov't Code § 508.149(b) ......................................................2

Tex. Gov't Code § 508.185 ........................................................22

Tex. Gov't Code § 508.186 ........................................................22

Tex. Gov't Code § 508.188 ........................................................22

Tex. Gov't Code § 508.190 ........................................................22

Tex. Gov't Code § 508.283(c) ....................................................25

Tex. Gov't Code §§ 508.181–.192.............................................37

## STATEMENT OF THE CASE

In 1994, Applicant was convicted of theft in Dallas County and sentenced to twenty-five years' imprisonment (the "theft conviction"). *See* Order at 1, *Ex parte Smiley*, Nos. WR-31,454-03 & WR-31,454-04 (Tex. Crim. App. Apr. 29, 2015) (per curiam) (Order). In 2006, while he was on parole for his theft conviction, Applicant was convicted of injury to a child in Tarrant County, and sentenced to ten years' imprisonment to be served concurrently with the sentence for his theft conviction (the "injury to a child" conviction). *Id.* Applicant's theft conviction is subject to the pre-1996 mandatory supervision (MS) statute, while his injury to a child conviction is governed by the "discretionary" mandatory supervision (DMS) statute in effect on his offense date. *Id.*; *see* Tex. Code Crim. Proc. art. 42.18 § 8(c) (West 1994)[1] (demonstrating that Applicant's theft conviction is governed by the pre-DMS statute); *see also* Tex. Gov't Code

---

[1] In 1997, the Texas Legislature repealed Article 42.18, and recodified its provisions into Section 508.149(b) of the Texas Government Code. *See Ex parte Geiken*, 28 S.W.3d 553, 555 (Tex. Crim. App. 2000); *see also* Acts 1997, 75th Leg., ch. 165, § 12.22, eff. Sept. 1, 1997. However, Applicant's theft conviction is governed by former Article 42.18. *See Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005) (the statute in effect when the holding offense is committed determines an inmate's eligibility for release to MS for that offense).

1

§ 508.149(b) (West 2006) (demonstrating that Applicant's injury to a child

conviction is governed by the DMS statute).

As relevant here, the Texas Department of Criminal Justice (TDCJ)

calculated the DMS-notice date for Applicant's injury to a child conviction

based upon the presumptive release date for Applicant's then controlling

eligible offense,[2] which at that time was Applicant's twenty-five year

theft conviction. Order at 1; 1SCHR at 10.[3] Hence, Applicant was

provided DMS notice for his injury to a child conviction on January 29,

2013—premised upon the date Applicant would be presumptively eligible

for release to MS for his *theft* conviction, on May 12, 2013. 1SCHR at 10.

The Board of Pardons and Paroles (Board) voted to deny Applicant DMS

---

[2] A "controlling" offense in this context is defined as follows: "When an inmate has multiple convictions, he will have one conviction which governs his release date, either because it is the most recent, contains the longest sentence, or has the least amount of time credits. It is the conviction that will keep the prisoner in custody for the greatest amount of time." *Ex parte Mabry*, 137 S.W.3d 58, 63 (Tex. Crim. App. 2004) (Keasler, J., concurring).

[3] "1SHCR" refers to the "1st Supplemental Clerk's Record" prepared by the clerk of the 213th District Court for this habeas proceeding; it is also attached as Appendix 1 to this brief. "2SHCR" refers to the "2nd Supplemental Clerk's Record" prepared by the clerk of the 213th District Court for this habeas proceeding; it is also attached as Appendix 2 to this brief. "3SHCR" refers to the "3rd Supplemental Clerk's Record" prepared by the clerk of the 213th District Court for this habeas proceeding; it is also attached as Appendix 3 to this brief. "SHCR" refers to the "Clerk's Record" prepared by the clerk of the 213th District Court for this habeas proceeding; it is also attached as Appendix 4 to this brief.

release for his injury to a child conviction on April 10, 2013 (the "initial DMS vote"). *Id.* The Board then reviewed and denied Applicant release to DMS on his injury to a child conviction two additional times, with a fourth DMS review date scheduled for December of 2015. *Id.*

Applicant challenged the timing of the initial DMS vote in this habeas application, filed pursuant to Article 11.07 of the Code of Criminal Procedure. SHCR at 2–24. To this end, he contends, in part, that he was entitled to a DMS vote for his injury to a child conviction sometime in 2010, when the aggregate good time and calendar time for that sentence equaled its ten-year term. SHCR at 8. As a result, he suggests that his due process rights under both the state and federal constitutions were violated because the Board waited more than two years to review and deny him for release to DMS for his injury to a child conviction. SHCR 21–23.

The state habeas trial court entered proposed findings of fact and conclusions of law recommending that Applicant's application be denied as moot because the Board had already voted three times to deny him DMS. SHCR at 60–65. After receiving the trial court's recommendation,

3

the Court placed the application in abeyance and ordered the trial court to obtain affidavits from TDCJ to resolve several factual issues: to enter additional findings of fact and conclusions of law as to when Applicant was eligible for release to DMS for his injury to a child conviction, and to determine when the Board voted to deny release. Order at 1–2, *Ex parte Smiley*, No. WR-31,454-03 (Tex. Crim. App. Nov. 26, 2014) (per curiam).

Upon remand, the trial court obtained an affidavit from TDCJ, and again entered proposed findings of fact and conclusions of law recommending that Applicant's application be denied. 3SHCR at 2–9. Upon receipt of those recommendations, the Court filed and set this application for submission to resolve the following two issues:

(1)  to determine the remedy, if any, for the failure to vote on Applicant's original discretionary mandatory release date in a timely fashion; and

(2)  to determine the legality of TDCJ's policy of not "releasing" a prisoner to mandatory supervision on one concurrent sentence until the prisoner is "eligible for release" on all concurrent sentences.

Order at 2. The Court also invited the Office of General Counsel of TDCJ to submit a brief to assist the Court in resolving the two issues. *Id.*

4

## STATEMENT REGARDING ORAL ARGUMENT

TDCJ respectfully submits that the primary legal questions raised in this appeal are adequately presented in the briefs and record, and that the decisional process on this point would not be significantly aided by oral argument.

## STATEMENT OF THE ISSUES

Applicant contends that the decision to link his initial DMS vote—which occurred in 2013—to the date he was presumptively eligible for MS release for his then controlling theft conviction, violates his due process protections under both the federal and state constitutions. Relatedly, Applicant now suggests that TDCJ's alleged failure to physically release him to mandatory supervision for his theft conviction in 2013, despite the fact that he had not qualified for physical release under the DMS statute for his injury to a child conviction, was unconstitutional too.[4] And while Applicant suggests the existence of a

---

[4] This claim, i.e., that Applicant should have been physically released to MS for his theft conviction in 2013, was first raised in his brief filed in this Court on June 25, 2015. *See* Applicant's Brief at 15–26, *Ex parte Smiley*, Nos. WR-31,454-03 & WR-31,454-04 (Tex. Crim. App. June. 25, 2015). In other words, it appears that Applicant

due process violation in his application, the two issues raised in the Order appear to frame the issue more broadly, to include the "legality" of Applicant's sentence calculation, generally. *See* Order at 2.

Important too, TDCJ notes with some concern that the second issue identified in the Order might be construed by Applicant as extending to hypothetical facts not presently before the Court. In other words, to the extent that the second issue invites consideration of the manner and timing in which TDCJ releases prisoners to mandatory supervision in *all cases*—and across the full spectrum of possible sentence combinations—such an opinion would be advisory and improper.[5] For this reason, TDCJ has limited its legal analysis to the calculation of Applicant's particular sentence combination. This is not to say that the parties should not refer

---

did not advance this claim as part of his original habeas application. *See* SHCR at 7–10, 21–23. In an abundance of caution, however, and because this new claim might fairly be construed as being part of the second issue designated by the Court in its Order, TDCJ will address it below.

[5] This Court "do[es] not write advisory opinions." *Warren v. State*, 652 S.W.2d 779 (Tex. Crim. App. 1983). And as the Texas Supreme Court has explained in greater detail: "The courts of this state are not empowered to give advisory opinions. This prohibition extends to cases that are not yet ripe. A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (internal citations omitted).

to hypothetical sentence combinations to explore the full meaning of the relevant statutory text, but only that Applicant should not be permitted to use his circumstances to dictate TDCJ policies for unrelated inmates.

## SUMMARY OF THE ARGUMENT

In his application Applicant faults the Board for conducting the initial DMS-vote in 2013, but he fails to describe how he thinks a favorable 2010 DMS-vote would have affected his continuing *physical* incarceration in the Correctional Institutions Division of TDCJ (TDCJ-CID).[6] Presumably, Applicant does not contend that his hypothetical 2010-"release" to DMS for his then non-controlling injury to a child offense would have required TDCJ-CID to *physically* release him for his then controlling theft offense. In other words, surely Applicant does not mean to suggest that his physical custody in TDCJ-CID is controlled by his *shortest* concurrent sentence. Such an approach would do so much violence to the statutory framework governing these questions that there

___

[6] Applicant's argument is necessarily premised on the possibility that he might have received a favorable DMS vote in 2010. Absent the possibility of a favorable vote, there is no liberty interest to protect.

7

is little reason to address it further.[7] Hence, TDCJ will assume Applicant contends that—upon a (hypothetical) favorable DMS vote in 2010—he would have remained in TDCJ-CID's physical custody until he was physically released for the theft offense.

The first and second questions posed by the Court are intertwined. The first assumes Applicant's minor premise—that the Board's initial DMS vote was untimely—then asks whether a remedy exists given that Applicant was subsequently reviewed and denied release to DMS three times. Since Applicant has already received a DMS vote, there is nothing to remediate; the question appears to be moot. In the alternative, the answer to the second question if resolved in favor of TDCJ and the Board, would also resolve the first, and establish that the initial DMS vote was *not* untimely. And if the Court agrees that neither TDCJ nor the Board violated the relevant statutory text when determining the timing for the initial DMS vote, there could be no due process violation—whatever due

---

[7] In such a system, an inmate who received a life sentence in 1990, and who was then paroled in 2005, could *intentionally* commit a minor DMS-eligible offense, and effectively nullify TDCJ-CID's authority to maintain legal custody for the life sentence at the moment the inmate received a favorable DMS-vote for the new concurrent sentence.

process protections attach to Applicant's initial DMS vote, they necessarily flow from the *text* of the controlling statutes.

Again, Applicant necessarily assumes that he could have obtained the benefit of DMS-"release" for his non-controlling injury to a child sentence in 2010, while continuing to remain in TDCJ-CID's *physical* custody for his theft offense. TDCJ will first analyze the legal and statutory implications of this assumption and demonstrate that it creates a serious conflict with both the relevant statutory framework and the opinions of this Court. Applicant's assumption creates a cascade of interpretive absurdities that are heightened here because—as is often the case when analyzing the statutes controlling MS, DMS, and parole—the provisions rarely make any reference to the dictates of the others.

Moreover, Applicant's contention that he should have been physically released to MS for his theft conviction in 2013, is also erroneous because it assumes that his *controlling* concurrent sentence is *static*. It ignores the statutory text demonstrating that Applicant's injury to a child offense became the controlling sentence when he became presumptively eligible to MS for his theft conviction. As TDCJ will

9

establish below, where an inmate has multiple concurrent, but dissimilar sentences, only one can be controlling at any given time, and the controlling sentence may *change* during that inmate's incarceration.[8]

In complying with their constitutional and statutory authority to interpret the law on these questions, TDCJ and the Board attempted to harmonize the relevant provisions as much as possible, so as to give full effect to them all. To this end, TDCJ advances a statutory interpretation that it believes resolves the absurdities created by Applicant's suggested approach, and which supports both its argument that Applicant's initial DMS vote was timely, and that Applicant is not entitled to MS release for his theft conviction until he receives a favorable DMS vote on his injury to a child conviction. And compellingly, TDCJ's suggested approach already finds support in this Court's jurisprudence.

Finally, TDCJ unreservedly acknowledges the difficulty in performing textual analysis on this particular statutory framework. And while TDCJ has attempted to harmonize the complex statutory

---

[8] When referring to "controlling sentence" in this context, TDCJ means the longest, remaining concurrent sentence for calculating MS or DMS eligibility—measured at a particular point in time.

commands regarding Applicant's particular sentence combination—in good faith—TDCJ looks to the Court for guidance moving forward.

ARGUMENT

I. Since Applicant Was Thrice Reviewed and Denied Release to DMS for His DMS-Eligible Offense, There Is Nothing to Remediate; the Issue is Moot.

This Court previously held with reference to the DMS statute at issue here that "an eligible inmate has a vested, statutory entitlement to release on mandatory supervision, but it is a defeasible interest—one that may be defeated, but only if the parole panel makes these findings in its review." *Ex parte Retzlaff*, 135 S.W.3d 45, 48–49 (Tex. Crim. App. 2004). But the Court went further when it held that the remedy for the failure to comply with the procedural obligations created by the DMS statute is to conduct a procedurally proper DMS hearing. *Id.* at 51 ("Because the mandatory supervision statute requires release unless a parole panel makes specific findings, we find that [Applicant's] . . . continued incarceration is illegal and unconstitutional unless, within sixty days, a parole panel has given him timely notice of a review to be held before the fifty-ninth day and has provided him at least thirty days

11

to submit whatever explanatory material he wishes the panel to consider.").

This has already happened. 1SHCR at 10. Because Applicant has thrice been reviewed and denied release to DMS, he has already received his remedy for the purported delay in conducting the initial DMS vote, and the issue before the Court appears to be moot. TDCJ acknowledges that Applicant's claim might nevertheless be justiciable under the "capable of repetition, yet evading review" doctrine. *E.g., Ex parte Bohannan*, 350 S.W.3d 116, 119–20 (Tex. Crim. App. 2011) (analyzing this exception to the mootness doctrine). However, Applicant's claim may fail to meet this exception for the same reason that the Court refused to extend the exception in *Bohannan*: because there is no reason to believe Applicant would again be subjected to the procedure at issue here.[9] *See id.*

---

[9] While TDCJ would undoubtedly benefit from the Court's guidance on these questions, the undersigned, as an officer of the Court, is duty-bound to raise the possibility of mootness.

II.     In the Alternative, Because the Initial DMS Vote Was Timely, Applicant's Rights Could Not Have Been Violated.

Applicant's argument regarding the timing of the DMS vote is premised upon his legal and factual assumption that the initial determination to deny his release to DMS for his injury to a child conviction should have occurred in 2010. As TDCJ will establish below, however, this assumption is inaccurate.

A.      Both TDCJ and the Board have independent legal authority to interpret Texas statutes related to their core, legislatively-created functions, including the interpretation of laws to determine how to calculate sentences and to institute parole review procedures.

As a general rule, when the Legislature expressly confers a power on a state agency, it also impliedly grants whatever powers are reasonably necessary to fulfill its express functions or duties. *Texas Advocates Supporting Kids with Disabilities v. Texas Educ. Agency*, 112 S.W.3d 234, 238 (Tex. App.—Austin 2003, no pet. hist.); *Public Utility Com'n of Texas v. City Public Service Bd. of San Antonio*, 53 S.W.3d 310 (Tex. 2001), *reh'g of cause overruled*, (Sept. 20, 2001). The only interpretative requirement placed on an administrative agency when exercising the powers and authority granted by the Legislature, is that

13

the agency's interpretations must be consistent with the constitution and state statutes. *Liberty Mut. Ins. Co. v. Griesing*, 150 S.W.3d 640 (Tex. App.—Austin 2004, pet. dism'd w.o.j.); *see also, Ex parte Keller*, 173 S.W.3d 492, 496 n.14 (Tex. Crim. App. 2005).

In the present circumstance, the Legislature conferred upon the Board the power to determine the application and function of mandatory supervision statutes, and necessarily the power to interpret those statutes. *See* Tex. Code Crim. Proc. art. 42.18 § 7 (West 1996), repealed by Acts 1997 75th Leg., ch. 165 § 12.22, effective September 1, 1997; codified as Government Code Chapter 508 by Acts 1997 75th Leg., ch. 165 § 12.01, effective September 1, 1997; Tex. Gov't Code §§ 508.001, 508.0441(c)(1). So too, the Legislature necessarily conferred upon TDCJ the power to calculate prison sentences, including the authority to determine when and whether both a sentence and the related term of incarceration, begins and ends. *E.g.*, Tex. Gov't Code § 494.001 ("The mission of the institutional division is . . . to effectively manage or administer correctional facilities based on constitutional and statutory standards.").

So, too, the construction given to a statute by the administrative agency charged with its enforcement is entitled to great weight by the state courts faced with construing the same statute, especially if an agency's interpretation of an ambiguous statute is consistent and uniform. *State v. Public Utility Com'n of Texas*, 883 S.W.2d 190, 196 (Tex. 1994); *Falkner v. Southwestern Sav. and Loan Ass'n of Houston*, 320 S.W.2d 164, 171 (Tex. Civ. App.—Austin 1958), *judgment aff'd in part, rev'd in part on other grounds*, 160 Tex. 417, 331 S.W.2d 917 (1960); *see Ex parte Keller*, 173 S.W.3d at 496 n.14.

Thus, the Court's constitutional authority to review the pre-existing and presumptively valid, statutory interpretations made by TDCJ and the Board, as relevant here, should not be conflated with their respective and independent authority to interpret those statutes, including this Court's decisions related thereto.

> **B.    Applicant's assumption that the initial DMS vote was untimely, exposes an interpretative tension within the statutory provisions creating the DMS procedure, and creates a cascade of potential absurdities.**

Before analyzing the manner in which TDCJ affirmatively determines the initial DMS-review date for offenders like Applicant, it is

15

necessary to survey the statutory framework upon which Applicant's competing approach is based. As TDCJ will establish, Applicant's interpretive approach leads to "odd results," which when harmonized with the relevant text as a whole, supports the sentence methodology used by TDCJ. *See Ex parte Forward*, 258 S.W.3d 151, 155 (Tex. Crim. App. 2008) ("The statutory provisions can be harmonized to avoid such odd results.").

As it relates to Applicant's DMS-eligible sentence, the Government Code defines "mandatory supervision" as:

> (5) "Mandatory supervision" means the *release* of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole *but under the supervision of the pardons and paroles division.*

Tex. Gov't Code § 508.001(5) (West 2006) (emphasis added). Obviously, the statute governing release to "mandatory" supervision uses mandatory language. *See* Tex. Gov't Code § 508.147(a) (West 2006) ("Except as provided by Section 508.149, a parole panel *shall order the release* of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good

16

conduct time equals the term to which the inmate was sentenced.") (emphasis added); *see also Ex parte Ruthart*, 980 S.W.2d 469, 472 (Tex. Crim. App. 1998) (noting that the precursor to § 508.147(a) is mandatory).

And under the relevant DMS statutes, the Board's vote to release an inmate to DMS requires TDCJ-CID to *transfer* that inmate's factual and legal custody to the "state," *see* Tex. Gov't Code § 508.143(b) (West 2006), and particularly to the direct control of the Pardons and Parole Division of TDCJ (TDCJ-PD), *see* Tex. Gov't Code § 508.001(5), and under the ultimate control of the Board to revoke or continue parole. *See* Tex. Gov't Code § 508.147(b) ("An inmate released to mandatory supervision is considered to be released on parole."). Plainly then, the Legislature's intent appears to be that an inmate's "release" to DMS—like his release to parole—necessarily entails his release from TDCJ-CID's *physical* custody to the control of an entity outside the prison walls.

Indeed, this Court has previously determined that "release" to DMS cannot occur unless two conditions are met: (1) the inmate cannot have any "other convictions or warrants authorizing their continued

17

confinement," and (2) "a parole panel has not determined such a release would endanger the public with the offense having been committed on or after September 1, 1996." *Ex parte Schroeter*, 958 S.W.2d 811, 813 n.4 (Tex. Crim. App. 1997). The Court's rationale in *Schroeter* gives strong support to the common-sense notion under this statutory scheme that "release" means *physical* release. *See id.* Moreover, because Applicant did not meet both of the requirements in *Schroeter*, he could not have been released in 2010. *Id.*

And the requirement that an inmate's "release" to mandatory supervision (or parole) means his *physical* release from TDCJ-CID's custody is implicit throughout both this Court's opinions, and the statutory framework mandating the terms of such release. For instance, in *Retzlaff*, the Court reasoned that the purpose of the DMS statute was "to permit a parole panel to exercise some discretion in deciding whether a person who was eligible for release on mandatory supervision should, nonetheless, be kept *in custody*." 135 S.W.3d at 48 (emphasis added). The term "in custody" as used in *Retzlaff* suggests that MS release refers to a *break* in an inmate's continued confinement within TDCJ-CID. *See id.* In

other words, *Retzlaff* suggests that the Board's decision to grant DMS entails a break in the inmate's continued incarceration for the sentence upon which DMS was granted. In arriving at this conclusion, the Court cited the legislative history for the DMS statute. *Id.* n.8 (citing H.B. 1433 Comm. Report (Amended), 74th Leg. (April 11, 1995) ("[t]he purpose of this Act is to give the Pardons and Parole Board a lever to close the 'automatic open door' of mandatory supervision. . . . This legislation allows for discretionary release by the Pardons and Parole Board for all inmates, while still providing for the original intent of the legislation, supervised release, in most instances")). When the Legislature referred to the "automatic open door" under the previous non-DMS scheme, surely it did not envision that an inmate's "release" to DMS would result in his continued incarceration in TDCJ-CID, in the same cell, pursuant to a different sentence. *See id.*

And in *Ex parte Hale*, the Court also distinguished between conditional releases resulting from parole and MS on the one hand, with continued *incarceration* on the other. 117 S.W.3d 866, 872 (Tex. Crim. App. 2003) ("Conditional releases are highly desired alternatives to

incarceration. For the overwhelming majority of defendants, release is not the penalty; incarceration is. Our files do not bulge with petitions from prisoners complaining of being punished by being released, and demanding to be imprisoned."). Much of the Court's jurisprudence in this regard supports this distinction.

More troubling, Applicant's approach would eviscerate the requisite constitutional premise upon which this Article 11.07 challenge is based. If he remained in TDCJ-CID custody after his hypothetical DMS release in 2010 for his injury to a child conviction, how then would he possess a liberty interest sufficient to raise the present challenge? As the Supreme Court explained, absent a *physical* release, there is nothing to protect:

> Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. *Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.*

*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (emphasis added).

*Morrissey* is premised on the existence of a conditional liberty interest created by an inmate's actual physical release to the "street." *See id*. It is

20

the parolee's *change* in physical custody, e.g., when his conditional liberty in continued parole is terminated in favor of his return to prison, which implicates the Due Process Clause. *Id.* Absent the possibility of obtaining the qualified liberty interest identified in *Morrissey*, there would be no due process right to protect. Remarkably, Applicant's statutory construction removes the minimum constitutional requirement from the DMS statute for inmates in his circumstance. In other words, if Applicant obtained a favorable DMS vote in 2010, but—pursuant to his view of Texas law—remained in TDCJ-CID's physical custody for his injury to a child conviction, he would not obtain a conditional liberty interest sufficient to invoke the minimum procedural due process protections attendant to the decisions related to the *custody he now challenges. See id.* If Applicant's statutory interpretation was correct, and if he was permitted to serve his post-DMS-release for his injury to a child conviction in TDCJ-CID's physical custody, then this habeas application would be non-cognizable, because there would be no conditional liberty interest to protect. Hence, if Applicant is correct, the Court should dismiss this claim as non-cognizable.

21

The *statutory* framework that would have governed the terms of Applicant's hypothetical "release" to DMS in 2010, also suggest that the Legislature intended DMS-release to mean the *physical* release from TDCJ-CID's custody. For example, a parole panel *shall* require as a condition of mandatory supervision, all of the following:

1. For those releasees guilty of stalking offenses, that the releasee not go near the victim, the victim's residence, place of employment, or business, nor go near a school or day-care facility where a dependent of the victim is in attendance. Tex. Gov't Code § 508.190.

2. Any releasee who attended an *in-prison* substance abuse program "immediately before *release*," *must* continue to attend a "drug or alcohol abuse continuum of care treatment program" after physical release, developed by the Texas Commission on Alcohol and Drug Abuse. Tex. Gov't Code § 508.185.

3. A releasee for whom a court has made an affirmative finding that the offense was committed because of bias or prejudice, must "perform not less than 300 hours of community service at a project designated by the parole panel that primarily serves the person or group that was the target of the releasee." Tex. Gov't Code § 508.188.

4. All releasees who are required to register as a sex offender actually register. Tex. Gov't Code § 508.186.

All of these mandatory conditions assume that the releasee is no longer in TDCJ-CID's physical custody. An assumption hard to reconcile with Applicant's contrary view.

Moreover, Applicant's contention that the Board was required to perform his initial DMS vote in 2010 leads to an array of other bizarre and absurd outcomes. Again, if we assume the Board granted Applicant DMS-"release" in 2010 (for his injury to a child conviction), this legal determination would require TDCJ-CID to transfer custody of the inmate to a separate entity outside the walls of the prison system, *e.g.*, to TDCJ-PD—*despite the fact* that the inmate was concurrently serving another, longer, prison sentence in CID's custody. And again, the Legislature likely intended that DMS-release result in the inmate's immediate physical release from the custody of TDCJ-CID. But even assuming that the Legislature's intent on this question was non-determinate, in order to achieve his result, and given there is no statutory framework authorizing hybrid custody within TDCJ-CID, Applicant necessarily asks the Court to order TDCJ-PD and the Board to assume legal custody and

control of Applicant for his DMS-sentence, while he remains in TDCJ-CID for another sentence.[10]

And his position creates another set of interpretive problems. If Applicant had been "released" to DMS in 2010 (while still in TDCJ-CID's physical custody for his theft offense), how would he continue to earn flat-time toward his DMS sentence? If Applicant contends that he is entitled to earn flat-time then he is necessarily asking this Court to order TDCJ-CID to award flat-time toward the DMS sentence, despite the fact that Applicant is no longer *serving* that sentence in TDCJ-CID's legal custody; and despite the fact that no other entity has restricted his liberty thereto by means of a detainer or blue-warrant. *See Ex parte Canada*, 754 S.W.2d 660, 668 (Tex. Crim. App. 1988) ("[A]pplicant is entitled to receive credit off his sentence for the seventy-four calendar days in which he was confined prior to the Board's withdrawal of the pre-revocation warrant and the initial continuation of his parole."). Applicant cites no textual

---

[10] This concern outlines the problem with Applicant's poorly conceived approach. While there may be nothing in the statutory framework explicitly *preventing* such hybrid custody within TDCJ-CID, the potential cost to TDCJ-PD and the Board to extend and maintain legal custody and control of such "releasees" strongly suggests that this requirement should come from the Legislature, and not the Court.

24

support for this outcome, and absent a statutory basis upon which to earn flat-time, his conditional release in 2010 would have prevented TDCJ from giving him credit toward his sentence. *Hale*, 117 S.W.3d at 871 ("In each form of conditional release (probation, parole, and mandatory supervision) no credit against a sentence is given for the time spent on conditional release.").

Or perhaps Applicant means to suggest that inmates in his position should earn street-time toward their DMS-sentences, despite the fact that they remain in TDCJ-CID custody for a different sentence. *See* Tex. Gov't Code § 508.283(c) (outlining the circumstances in which a parolee is entitled to street-time credit). Indeed, if Applicant intends this—and given the ephemeral and revocable nature of street-time credit—Applicant is putting all similarly situated inmates in a *less* advantageous position than if the 2010 DMS vote had not occurred at all. *See id.*

In other words, Applicant's poorly conceived position may make it impossible for some inmates to discharge, day-for-day, their non-controlling DMS-sentences, after DMS-"release," despite the fact that they *remain in prison*, and would unquestionably have received flat-time

25

credit if the 2010 DMS-vote had not occurred. Applicant fails even to acknowledge these serious interpretive problems, let alone to suggest a way to solve them.

Finally, Applicant's approach ignores the text of Government Code Section 508.149(b), which justifies the decision to link Applicant's DMS-vote to the presumptive date for Applicant's MS release for his theft conviction. Section 508.149 reads, in relevant part:

> (b) An inmate may not be released to mandatory supervision if a parole panel determines that:
>
>> (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and
>>
>> (2) the inmate's release would endanger the public.

Tex. Gov't Code § 508.149 (West 2006). Applicant's situation demonstrates the problem with his interpretation. If the Board were required to perform Applicant's initial DMS-vote in 2010, more than two years before Applicant could have been *physically* released with respect to his controlling theft conviction, how then could the Board accurately determine whether his release to DMS "would endanger the public"?

26

As this Court held in an analogous circumstance, to ensure the *accuracy* of the Board's determination to grant or deny DMS release, that vote must be premised upon timely, *up-to-date* information regarding the inmate's propensity to be a danger to the public. *Retzlaff,* 135 S.W.3d at 49 ("The two statutory findings that justify non-release are predictive judgments based upon discrete factual conclusions and subjective appraisals. Necessarily, then, they are highly contingent upon accurate, up-to-date information and explanation."). Like any inmate, Applicant's conduct in prison during the intervening two years (between a hypothetical and favorable 2010 DMS vote, and his ultimate physical release), could establish that his release would endanger the public. Applicant's interpretation could reduce the accuracy of the public safety inquiry, surely contrary to legislative intent. By requiring a Board vote in 2010, Applicant would have this Court nullify the textual command and statutory purpose of § 508.149(b).

In sum, because his "release" to DMS for his injury to a child offense was impossible—at least for so long as his theft offense was controlling—

27

TDCJ will look to the remaining statutory text as a whole in an effort to resolve the apparent absurdities.

> ### C. Applicant's legal rights could not have been violated with respect to his DMS sentence, because the Legislature limited the force and effect of good-time to only his conviction for theft—at least while he was serving his controlling, concurrent sentence for theft.

In circumstances like this, when the text of a statute could lead to absurd results, the Court has provided those agencies tasked with enforcing the Legislative mandates with guidance as to how to proceed:

> When we interpret statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. We focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. Thus, if the meaning of the statutory text should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. The exception is when application of a statute's plain language would lead to absurd consequences that the legislature could not possibly have intended; in such a case, we refer to extratextual factors to determine legislative intent.

*Ruthart*, 980 S.W.2d at 471 (internal citations omitted). As already established, Applicant's reading of the relevant DMS statutes necessarily means that the Board's initial DMS vote was untimely. But as also

28

established, Applicant's interpretation leads to several unworkable, ambiguous, and absurd results.

To this end, TDCJ directs the Court to other provisions within the relevant statutory framework, which support the manner in which Applicant's sentences were calculated here, and which suggest that Applicant's initial DMS vote was timely. By harmonizing the statutory provisions suggesting the necessity of an earlier DMS vote with the Legislature's other directives, the methodology used by TDCJ finds support.

As relevant here, Chapter 498 of the Government Code reads:

(2) "Term" means:

    (A) the term of confinement in the institutional division stated in the sentence of the convicting court, if the inmate is serving a sentence for a single offense;

    (B) the term of confinement established by Section 508.150, if the inmate is serving two or more sentences consecutively;  or

    (C) *the longest term of confinement in the institutional division stated in the sentence of the convicting court, if the inmate is serving two or more concurrent sentences.*

Tex. Gov't Code § 498.001(5) (emphasis added). Plainly then, for purposes of Chapter 498, in 2010 Applicant's "term of confinement" referred to his theft conviction, which was Applicant's longest, controlling term. *See id.*; *see also supra*, note 2. This definition is important because, later in the same chapter, the Legislature narrows the force and effect of good-conduct time to the availability of DMS with specific reference to Chapter 508. Specifically, Chapter 498 states:

> Good conduct time applies *only to eligibility for parole or mandatory supervision* as provided by Section 508.145 or *508.147* and does not otherwise affect an inmate's term.

Tex. Gov't Code § 498.003(a) (West 2006) (emphasis added). Again, this provision is important because it extends—by explicit reference—the limitations that Chapter 498 places on the relevance of good-time and the availability of DMS to the "mandatory" command found in § 508.147(a). *See id.* By its literal terms then, § 498.003(a) limits the availability of DMS as derived from § 508.147(a), as follows:

> Except as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the *term* to which the inmate was sentenced.

Tex. Gov't Code § 508.147(a) (West 2006) (emphasis added). It bears repeating: the Legislature explicitly limited the effect of good time, and specifically its capacity to contribute to the calculation of mandatory supervised release, to only "the *term* to which the inmate was sentenced." *See id.* And given that the definition of "term" in Chapter 498 explicitly extends to the mandatory directive in § 508.147(a), by means of § 498.003(a), inmates like Applicant are legally entitled to DMS for only their "longest term of confinement," at least when serving two or more dissimilar sentences, concurrently.

Indeed, the Court has confirmed TDCJ's interpretation in a similar circumstance—unanimously—at least in dicta:

> Arguably, the "plain" language of Section 508.147(a) *applies only to an inmate who has been sentenced to a single term and does not apply to an inmate serving multiple sentences*. This interpretation would also resolve any conflict between former Article 42.18, § 8(c), and former Article 42.18, § 8(d). This interpretation of Section 508.147(a) would also dispose of applicant's claim that his eligibility for mandatory supervision for the offense in cause number 0243176D caused the sentence for that offense to cease to operate.

*Ex parte Cowan*, 171 S.W.3d 890, 894 n.10 (Tex. Crim. App. 2005) (emphasis added) (internal citations omitted). Although *Cowan* involved

31

the analysis of *consecutive* sentences under Government Code § 498.001(5)(B), and not to *concurrent* sentences under § 498.001(5)(C), there is no textual reason to treat the two, co-equal subparts differently. Moreover, *Cowan* supports TDCJ's interpretation because the Court there resolved a similar interpretive dilemma by construing the word "term" (as utilized in § 508.147(a)) to refer to a *single*, identifiable, controlling sentence. The same rationale exists here.

Thus, a fair reading of the relevant text suggests that Applicant's legal rights could *not* have been violated with respect to his DMS sentence because the Legislature limited the force and effect of good-time to *only* his conviction for theft—at least for so long as his theft offense was his controlling sentence. In other words, until Applicant's DMS-eligible offense became the *controlling* sentence under Government Code § 498.001(5)(C)—which coincided with the initial DMS vote in 2013—he could not have received the benefit of good time toward calculation of his DMS eligibility date for his injury to a child conviction. Only *after* his DMS sentence became controlling (i.e., only after he qualified for presumptive MS release for his theft offense), did the mandatory

32

calculation under § 508.147(a) become relevant to his DMS eligible offense. This is precisely what occurred here, *see* 1SHCR at 10, and is wholly consistent with the text of the statute.

Finally, TDCJ acknowledges this Court's decision in *Ruthart*, in which the Court explicitly declined to incorporate the definition of "term" from Chapter 498 to define "*maximum* term" as used in former Article 42.18, § 8(c). *Ruthart*, 980 S.W.2d at 472 ("[T]his definition is specifically limited to the Government Code."). TDCJ distinguishes *Ruthart* for three reasons. First, the Court there was faced with both a different statutory framework (e.g., the definition of "maximum term" as used in former Article 42.18), and a distinct set of interpretive tensions related to *consecutive* sentences. Second, the Court neither addressed nor rejected TDCJ's present contention that a fair reading of Government Code § 498.003(a) extends the definition of "term" beyond Chapter 498. Finally, the Court implicitly adopted the methodology TDCJ used here when it defined a "maximum term" for a *concurrent* sentence like that of Applicant, in a manner that supports the methodology here. *See id.* at 473 ("For an inmate serving two or more concurrent sentences, we believe

33

his "maximum term" must be the longest of the concurrent sentences, because this is the sentence that will keep him incarcerated for the longest amount of time."). Hence, *Ruthart* actually supports the calculation below, and is arguably outcome determinative here.

In sum, Applicant is entitled to DMS consideration for his injury to a child conviction, but only after it becomes his controlling sentence. This approach acknowledges the fact that his "release" to DMS (i.e., to parole) could never occur unless he was first released from physical custody for his longest, concurrent and controlling sentence. In other words, when interpreting these statutory dictates, the Court should distinguish between "the *when* of eligibility for release [to DMS] with the *whether* of eligibility for release." *Forward*, 258 S.W.3d at 151 (emphasis in original). And as the facts of this case demonstrate, doing so permits TDCJ-CID to abide by its legal obligation to maintain legal custody and control over Applicant for his controlling sentence, while also ensuring that Applicant ultimately receives an up-or-down DMS vote for his injury to a child conviction—but only after the DMS sentence becomes controlling. It also avoids the legal absurdity that would result if TDCJ-CID was presented

34

with a certificate of release for Applicant's DMS-sentence—signifying his release to *parole*—but was nevertheless required to maintain Applicant's legal and factual custody for his controlling sentence.

Because Applicant could not have received the benefit of good-time toward calculation of his DMS-eligibility date for his injury to a child conviction until *after* that sentence became controlling, he was not entitled to a DMS vote in 2010. Hence, the initial DMS vote was *not* untimely under the statutory framework, and absent a violation under that framework, there could not have been a due process violation. *See Retzlaff*, 135 S.W.3d at 48–49 (demonstrating that an inmate's protectable liberty interest in mandatory release is based on the meaning and applicability of the relevant statute).

### III. Because Applicant's Theft Offense Ceased to Be the Controlling Sentence As of the Moment He Became Presumptively Eligible for MS Release Thereto, Applicant's Rights Could Not Have Been Violated.

Applicant also suggests that he was entitled to *physical* release in May of 2013 under the pre-1996 MS statute for his theft conviction. *See supra*, note 4. Hence, according to Applicant, TDCJ violated his due process rights by failing to physically release him in 2013, and this Court

should order such release immediately, despite the fact that he does not yet qualify for release for his DMS sentence. For the reasons that follow, Applicant is incorrect.

A controlling offense "is the conviction that will keep the prisoner in custody for the greatest amount of time." *Mabry*, 137 S.W.3d at 63 (Keasler, J., concurring). When applying the definition of controlling offense for inmates with dissimilar concurrent sentences, there is no requirement that the designation be *permanent*. And yet, Applicant's argument is necessarily premised on the idea that his theft offense is controlling, *forever*. As TDCJ will establish below, such an assumption leads to absurd results.

For instance, Applicant's approach would force TDCJ-CID to physically release him to MS for his theft conviction, *despite the fact* that the statutory requirements authorizing his release for his injury to child conviction, had not yet occurred. But until the Board affirmatively *releases* Applicant to DMS for his injury to child conviction—signified by a favorable vote and certificate of release under Chapter 508—there would be no legal mechanism for the Board to impose parole conditions

for that sentence. *E.g.*, Tex. Gov't Code §§ 508.181–.192 (outlining the conditions governing parole that attach *after* an inmate's affirmative release for a particular sentence). In other words, absent a certificate of release issued pursuant to § 508.149 for his DMS offense—which Applicant has never received—neither the Board nor TDCJ-PD would ever obtain legal custody of Applicant for that sentence. *See* Tex. Gov't Code § 508.147(b) ("An inmate released to mandatory supervision is considered to be released on parole."). Without legal control, there can be no parole conditions to enforce.

If Applicant means to suggest that the Legislature intended he serve the remainder of his injury to a child sentence without being subject to parole supervision, he makes no effort to account for this result. If Applicant means to suggest that the Court should order the Board to grant DMS release for his injury to a child conviction, to permit him the benefit of physical release to MS for his theft conviction, he cites no authority for this either.

Whatever Applicant may intend, if this Court granted his habeas application, and ordered his physical release to MS for his theft

conviction, the Court would effectively allow Applicant to serve the remainder of his injury to a child sentence beyond the reach and control of both TDCJ-PD and the Board (at least for that sentence).

There is a strong statutory basis upon which to avoid the absurdities created by Applicant's approach. As established above, by defining "maximum term" to mean the longest *remaining* concurrent sentence—as measured at a given point in time—the absurdities implicit in Applicant's approach disappear. As applied here, the moment Applicant's good-time and calendar-time totaled the twenty-five year term for his theft offense (i.e., the presumptive MS date), that sentence no longer qualified as his controlling sentence, because it no longer served to justify continued incarceration in TDCJ-CID. At that moment Applicant's injury to child sentence became controlling, because it was the only remaining concurrent sentence that required continued incarceration in TDCJ-CID.

Although Applicant does not complain on this point, it is worth noting that the Board did not formally issue a certificate of MS release for his theft offense in 2013, despite the fact that he met his presumptive

release date for that sentence. As discussed above, doing so would have led to the statutory absurdities attendant in "releasing" an inmate to MS while that inmate remains in TDCJ-CID custody for another sentence, *see supra*, Section II. This approach also ensured that Applicant would continue to earn both flat-time toward his sentence for theft.

Because Applicant's DMS-eligible sentence became the controlling sentence (for purposes of the MS release mechanism) as of the date he was presumptively eligible for MS release for this theft offense, he was not entitled to *physical* release in 2013. And absent a statutory violation, there could not have been a due process violation. *See Retzlaff*, 135 S.W.3d at 48–49 (demonstrating that an inmate's protectable liberty interest in mandatory release is based on the meaning and applicability of the relevant statute).

## PRAYER FOR RELIEF

For the foregoing reasons, TDCJ respectfully requests that this Court dismiss Applicant's Article 11.07 application as moot, or alternatively to deny the application, and hold that the manner methodology used here was correct.[11]

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN*
*Lead Counsel Assistant Attorney General
Supervising Attorney
  for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549

---

[11] If the Court adopts a different interpretation, TDCJ humbly asks the Court to assist it in harmonizing the new approach with the remaining statutory framework. TDCJ has attempted to identify some of the interpretative tensions above, and asks the Court to address at least those questions.

Joseph.Corcoran@TexasAttorneyGeneral.gov

P. O. Box 12548, Capitol Station
Austin, Texas 78711

ATTORNEYS FOR THE TEXAS
DEPARTMENT OF CRIMINAL
JUSTICE

41

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5(b)(1) of the Texas Rules of Appellate Procedure, I do hereby certify that if the email address of the attorneys designated below is on file with the electronic filing manager, a true and correct copy of the foregoing notice was served electronically by that electronic filing manager, on the following attorneys via electronic mail:

Kenneth Nash
State Counsel for Offenders
Attorney for Applicant

Andrea Jacobs
Assistant Criminal District Attorney
Tarrant County, Texas

Moreover, I do hereby certify that if the email addresses for the designated attorneys are not on file with the electronic filing manager, a true and correct copy of the foregoing pleading was served by email, addressed to:

Kenneth Nash
Ken.Nash@tdcj.texas.gov

Andrea Jacobs
atjacobs@tarrantcounty.com

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

42

## CERTIFICATE OF COMPLIANCE WITH
## TEXAS RULE OF APPELLATE PROCEDURE 73.1(f)

This brief complies with Tex. R. App. Proc. 73.3 in that it contains

9,055 words, as calculated pursuant to Tex. R. App. Proc. 73.1(d), in

Microsoft Word 2013, Century, 14 points.

/s/ Joseph P. Corcoran
JOSEPH P. CORCORAN
Assistant Attorney General

# Nos. WR-31,454-03 & WR-31,454-04

---

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

---

## EX PARTE RODNEY ELNESTO SMILEY, Applicant.

---

On Application for a Writ of Habeas Corpus

Cause No. C-213-010293-1011284-B
In the 213th District Court from Tarrant County

Cause No. W94-02594-U(A)
In the 291st District Court from Dallas County

---

## APPENDICES

---

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

\*JOSEPH P. CORCORAN
Assistant Attorney General
Supervising Attorney
for Non-Capital Appeals
Criminal Appeals Division
State Bar No. 00793549
Joseph.Corcoran@TexasAttorneyGeneral.gov

\*Lead Appellate Counsel
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1400
Facsimile: (512) 936-1280

---

ATTORNEYS FOR THE
TEXAS DEPARTMENT OF CRIMINAL JUSTICE

# APPENDIX A

## 1st Supplemental Clerk's Record

Writ Number:  **C-213-010293-1011284-B**

Filed In the **213TH DISTRICT COURT**
of Tarrant County, Texas
Hon. **LOUIS E. STURNS**, Presiding Judge



### EX PARTE:  **RODNEY ELNESTO SMILEY**

VS.

THE STATE OF TEXAS

Appealed to the Court of Criminal Appeals
for the State Of Texas
at Capitol Station
AUSTIN, TEXAS

**RECEIVED IN
COURT OF CRIMINAL APPEALS**

**JAN 30 2015**

**Abel Acosta, Clerk**

## ATTORNEY FOR THE APPELLANT

**KENNETH NASH, RETAINED
STATE COUNSEL FOR OFFENDERS
P.O. BOX 4005
HUNTSVILLE, TEXAS 77342-4005
PHONE:          (936) 437-5203
FAX:
SBOT:          14811030
Attorney for RODNEY ELNESTO SMILEY, Appellant**

Delivered to the Court of Criminal Appeals for the State Of
Texas At Capitol Station, AUSTIN, Texas, on the

**28** day of **January**, **2015**

THOMAS A. WILDER, DISTRICT CLERK,
TARRANT COUNTY, FORT WORTH, TEXAS

**LAUREN RABY**

Deputy District Clerk

(Court of CRIMINAL APPEALS) .
Cause No. _____
Filed in the Court of Criminal Appeals for the State of Texas,
at Capitol Station, AUSTIN, Texas, this

_____ day of _____, _____

_____LOUISE PEARSON_____, Clerk

By _____, Deputy

# INDEX

Caption............................................................................................................................1

Order from the Court of Criminal Appeals......................................................................2

Memorandum and Order....................................................................................................6

Affidavit of Charley Valdez..............................................................................................8

Clerk's Certificate............................................................................................................13

THE STATE OF TEXAS                    §

COUNTY OF TARRANT                     §

At a term of the **213TH DISTRICT COURT** of Tarrant County, Texas, the Honorable **LOUIS E. STURNS** sitting as Judge of said court, the following proceedings were had, to-wit:

Writ Number: C-213-010293-1011284-B

EX PARTE:

RODNEY ELNESTO SMILEY

VS.

THE STATE OF TEXAS

1

C-213- 010293-1011284-B



FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 01 2014

TIME 8:05
BY _____ DEPUTY

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-31,454-03

### EX PARTE RODNEY ELNESTO SMILEY, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS CAUSE NO. 1011284D IN THE 213TH DISTRICT COURT FROM TARRANT COUNTY

*Per curiam.*

## ORDER

Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure, the clerk of the trial court transmitted to this Court this application for a writ of habeas corpus. *Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was convicted of injury to a child and sentenced to ten years' imprisonment.

Applicant contends that his due process rights were violated when the Board of Pardons and Paroles did not vote on his discretionary mandatory supervision for more than two years after he was eligible for mandatory supervision release. Applicant has alleged facts that, if true, might entitle him to relief. TEX. GOV'T CODE § 508.147; *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).. In these circumstances, additional facts are needed. As we held in *Ex parte Rodriguez*, 334

SCANNED

2

S.W.2d 294, 294 (Tex. Crim. App. 1960), the trial court is the appropriate forum for findings of fact.

The trial court shall order the Texas Department of Criminal Justice's Office of the General Counsel to file an affidavit listing Applicant's sentence begin date and his initial discretionary mandatory supervision eligibility and review dates. The affidavit should indicate whether Applicant's initial review date changed, and if so, why the date was changed and the new date for review. The affidavit shall also indicate the dates of any discretionary mandatory supervision votes.

It appears that Applicant is represented by counsel. If the trial court elects to hold a hearing, it shall determine if Applicant is represented by counsel, and if not, whether Applicant is indigent. If Applicant is indigent and wishes to be represented by counsel, the trial court shall appoint an attorney to represent Applicant at the hearing. TEX. CODE CRIM. PROC. art. 26.04.

The trial court shall make findings of fact and conclusions of law as to when Applicant was eligible for release to discretionary mandatory supervision and when the Board of Pardons and Paroles voted to deny release. The trial court shall also make any other findings of fact and conclusions of law that it deems relevant and appropriate to the disposition of Applicant's claim for habeas corpus relief.

This application will be held in abeyance until the trial court has resolved the fact issues. The issues shall be resolved within 90 days of this order. A supplemental transcript containing all affidavits and interrogatories or the transcription of the court reporter's notes from any hearing or deposition, along with the trial court's supplemental findings of fact and conclusions of law, shall be forwarded to this Court within 120 days of the date of this order. Any extensions of time shall be obtained from this Court.

Filed: November 26, 2014
Do not publish



**SHARON KELLER**
PRESIDING JUDGE

**LAWRENCE MEYERS**
**TOM PRICE**
**PAUL WOMACK**
**CHERYL JOHNSON**
**MIKE KEASLER**
**BARBARA P. HERVEY**
**CATHY COCHRAN**
**ELSA ALCALA**
  JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

**ABEL ACOSTA**
CLERK
(512) 463-1551

**SIAN SCHILHAB**
GENERAL COUNSEL
(512) 463-1597

Wednesday, November 26, 2014

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 01 2014

TIME _____ 8:05 _____
BY _____ DEPUTY

Presiding Judge 213th Dist Court
401 W. Belknap
Ft. Worth, TX 76196

Re: SMILEY, RODNEY ELNESTO
CCA No. WR-31,454-03
Trial Court Case No. C-213-010293-1011284-B

COA No.

The Court has this day issued an order for the above referenced cause.

Sincerely,

Abel Acosta, Clerk

cc: District Clerk Tarrant County (DELIVERED VIA E-MAIL)
Kenneth Nash
District Attorney Tarrant County (DELIVERED VIA E-MAIL)
RODNEY ELNESTO SMILEY

5

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

DEC 11 2014

TIME 4:12

_____ DEPUTY

EX PARTE § IN THE 213th JUDICIAL

§

§ DISTRICT COURT OF

§

RODNEY ELNESTO SMILEY § TARRANT COUNTY, TEXAS

## MEMORANDUM

The applicant, RODNEY ELNESTO SMILEY ("Applicant"), alleges that he was denied

due process by the Texas Board of Pardons and Parole's late vote to deny him release to

discretionary mandatory supervision. The Texas Court of Criminal Appeals has remanded this

application back for resolution of this issue. *See Ex parte Smiley*, No. WR-31,454-03 (Tex. Crim.

App. Nov. 26, 2014) (not designated for publication). Specifically, the Court has directed this Court

to order officials with the Texas Department of Criminal Justice to provide a response regarding

Applicant's sentence date and when he has been considered for release to mandatory supervision.

*Id.*

## ORDER

1. An affidavit is **ORDERED** from a representative from the Texas Department of Criminal Justice answering the following questions:
   a. When was Applicant's sentence begin date in this case;
   b. When Applicant was eligible for release to mandatory supervision;
   c. When Applicant's mandatory supervision review was initially set;
   d. Whether Applicant lost or gained any good time credit that affected his review date;
   e. Whether Applicant's initial review date changed and, if so, why was the date changed;
   f. If Applicant's initial review date was changed, what was the new date set; and
   g. On what dates has Applicant actually been considered for release to mandatory supervision.

1

6


SCANNED

2. The representative shall submit an original and three copies of the affidavit to the post-conviction writ clerk by **February 9, 2015**. The clerk shall then mail a copy of the affidavit to Applicant and forward a copy of the affidavit to the appellate section of the Tarrant County Criminal District Attorney's Office.

3. The clerk of the court is ordered to send a copy of this order to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 and to send a copy of this order to the appellate section of the District Attorney's Office.

SIGNED AND ENTERED this the 11th day of _December_____, 2014.

_____
JUDGE PRESIDING

CHARLES P. REYNOLDS
TARRANT COUNTY
CRIMINAL MAGISTRATE

2

7

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

JAN 26 2015

TIME_____2:00_____
BY_____ DEPUTY

## AFFIDAVIT OF CHARLEY VALDEZ

STATE OF TEXAS

COUNTY OF WALKER

BEFORE ME, the undersigned, a Notary Public in and for the State of Texas, on this day personally appeared Charley Valdez, who, after being duly sworn, deposes as follows:

"My name is Charley Valdez. I am over twenty-one years of age, of sound mind; capable of making this affidavit; and personally acquainted with the facts herein stated.

I am employed as Program Supervisor III for the Classification and Records Department ("CRD") of the Texas Department of Criminal Justice-Correctional Institutions Division, and my office is located in Huntsville, Texas. I have reviewed time records kept by the CRD regarding offender **Rodney Elnesto Smiley, TDCJ # 693698.** CRD maintains these records in the regular course of business of every offender confined; and it was the regular course of business for an employee or representative to TDCJ-CID with knowledge of the act, event, condition, opinion or diagnoses, recorded to make the record or to transmit information thereof to be reasonably soon thereafter. Based on my review of these records, the following table contains the current sentence information for Smiley.

SCANNED

8

| Offenses | County | Cause Number | Sentence | Date of Offense | Sentence Date | Sentence Begin Date | Maximum Expiration Date |
|---|---|---|---|---|---|---|---|
| Theft Property O/750 | Dallas | F-9402594-PU | 25-years | 2-8-1994 | 11-28-1994 | 6-28-1994 | 11-4-2023 |
| Injury to Child W/Intent to cause SBI 3rd Degree | Tarrant | 1011284D | 10-years | 8-1-2004 | 10-26-2006 | 2-8-2006 | 2-8-2016 |

| Released to Supervision | Pre-Revocation Warrant Issued | Pre-Revocation Warrant Executed | Pre-Revocation Warrant Withdrawn | Supervision Revoked | Jail Credit | Time Forfeited |
|---|---|---|---|---|---|---|
| 9-18-2001 | 6-25-2003 | 7-1-2003 | 8-7-2003 | | 7-1-2003 to 8-7-2003 | |
| | 3-2-2006 | 3-2-2006 | | 11-8-2006 | 3-2-2006 to present | 4-yrs. 4-mos. 8-days |

a. *When was Applicant's sentence begin date in this case;*

ANS: Applicant was received into TDCJ on 1-30-1995 from Dallas County on a 25-year sentence. Applicant was convicted by the 291st Judicial District Court for the following:

➢ Theft Property O/750, under cause number F-9402594-PU. Applicant was convicted for an offense occurring on 2-8-1994, with sentencing on 11-28-1994, and sentence to begin on 6-28-1994. This offense is eligible for mandatory supervision.

Applicant was released from TDCJ custody to parole on 9-18-2001.

A pre-revocation warrant of arrest was issued on 6-25-2003 by the Parole Division, and executed on 7-1-2003 in Dallas County. Warrant was withdrawn on 8-7-2003, and Applicant was released from custody. Applicant received jail credit from 7-1-2003 to 8-7-2003.

A pre-revocation warrant of arrest was issued on 3-2-2006 by the Parole Division, and executed on 3-2-2006 in Tarrant County.

Applicant was convicted by the 213th District Court of Tarrant County, and received a 10-year sentence for the following:

➢ Injury to Child W/Intent to Cause Bodily Injury, under cause number 1011284D. Applicant was convicted for an offense occurring on 8-1-2004, with sentencing on 10-26-2006, and sentence to begin on 2-8-2006. This offense is eligible for discretionary mandatory supervision (DMS).

Applicant's parole was revoked on 11-8-2006, and Applicant was transferred to TDCJ custody on 12-5-2006. Applicant forfeited 4-years, 4-months, and 8-days of calendar "street-time", pursuant to Texas Government Code § 508.283(c), due to not meeting the mid-point calculation date of 8-6-2010. Applicant received jail credit from 3-2-2006 to present.

9

*b.   When Applicant was eligible for release to mandatory supervision;*

ANS:   Because an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses, TDCJ calculates the projected mandatory release date on the controlling mandatory eligible offense; in this instance cause number F-9402594-U had a projected mandatory supervision date of 5-12-2013, and his DMS notice was based on this date.   On 1-29-2013, Applicant was provided notice that he was being reviewed for DMS on cause number 1011284D, and that he had until 2-28-2013 to provide any information to the Board of Pardons and Paroles (BPP) regarding his release.   On 4-10-2013, the BPP voted to deny release to DMS with a next review date of 04/2014.

On 12-12-2013, Applicant was provided notice that he was being reviewed for DMS, and that he had until 1-11-2014 to provide any information to the BPP regarding his release.   On 2-18-2014, the BPP voted to deny release to DMS with a next review date of 02/2015.

On 10-14-2014, Applicant was provided notice that he was being reviewed for DMS, and that he had until 11-15-2014 to provide any information to the BPP regarding his release.   On 12-15-2014, the BPP voted to deny release to DMS with a next review date of 12/2015.

*c.   When Applicant's mandatory supervision review was initially set;*

ANS: *Please refer to answer #b.

*d.   Whether Applicant lost or gained any good time credit that affected his review date;*

ANS: A parolee's previously accrued good time credits earned before release to supervision are forfeited when his supervision is revoked. Tex. Gov't Code sec. 498.004.  Applicant has not lost any good time since his revocation on 11-8-2006.

*e.   Whether Applicant's initial review date was changed and, if so, why was the date changed;*

ANS: No, Applicant's initial review date was not changed.  *Please refer to answer #b.

*f.   If Applicant's initial review date was changed, what was the new date set; and*

ANS: *Please refer to answer #e.

*g.   On what dates has Applicant actually been considered for release to mandatory supervision.*

ANS: *Please refer to answer #b.

_CHARLEY VALDEZ_
**Program Supervisor III**
**Classification and Records**
**Texas Department of Criminal Justice**
**Correctional Institutions Division**

**SUBSCRIBED AND SWORN TO** before me, the said Notary Public on this the 22nd day of January, 2015, to certify which witness my hand and seal of office.

Notary Public In and For
The State of Texas

RACHEL ELLISOR WILLIAMS
Notary Public, State of Texas
My Commission Expires
SEPTEMBER 18, 2018

Notary without Bond

11

AFTER FIVE DAYS RETURN TO

TEXAS DEPARTMENT OF CRIMINAL JUSTICE



C. Valdez
PO Box 99
Huntsville, TX 77300

FILED
THOMAS A WILDER DIST CLERK
TARRANT COUNTY. TEXAS

JAN 2 6 2015

TIME _____
BY _____ DEPUTY

213th District Court
Tim Curry Justice Center
401 W. Belknap
Fort Worth, TX 76196

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 77320 $ 000.48°
02 1W
0001387404 JAN. 23 2015

12

Certified True Copy

THE STATE OF TEXAS                              §

COUNTY OF TARRANT                            §

I, Thomas A. Wilder, Clerk of the District Courts of Tarrant County, Texas, do hereby certify that the above and foregoing is a true and correct copy of ALL PROCEEDINGS HAD.

In Writ Number:  **C-213-010293-1011284-B**

EX PARTE:  **RODNEY ELNESTO SMILEY**
VS.
THE STATE OF TEXAS

as the same appears on the file and/or record in my said office.

GIVEN UNDER MY HAND and seal of Said Court at office in the City of Fort Worth, Tarrant County, Texas, this the _28_ , day of _January_, A.D. _2015_.

THOMAS A. WILDER
CLERK, DISTRICT COURTS, TARRANT COUNTY, TEXAS

BY _Lauren Raby_
Deputy

**13**

# APPENDIX B

## 2nd Supplemental Clerk's Record

## 2nd SUPPLEMENTAL

# CLERK'S RECORD

### VOLUME 1 of 1

Writ Number: **C-213-010293-1011284-B**

Filed In the **213TH DISTRICT COURT**
of Tarrant County, Texas
Hon. **LOUIS E. STURNS**, Presiding Judge

## EX PARTE: **RODNEY ELNESTO SMILEY**

VS.

### THE STATE OF TEXAS

Appealed to the Court of Criminal Appeals
for the State Of Texas
at Capitol Station
AUSTIN, TEXAS

**RECEIVED IN**
**COURT OF CRIMINAL APPEALS**

**FEB 17 2015**

**Abel Acosta, Clerk**

## ATTORNEY FOR THE APPELLANT

**KENNETH NASH, RETAINED**
**STATE COUNSEL FOR OFFENDERS**
**P.O. BOX 4005**
**HUNTSVILLE, TEXAS 77342-4005**
**PHONE:** 936-437-5203
**FAX:**
**SBOT:** 14811030
**Attorney for RODNEY ELNESTO SMILEY, Appellant**

Delivered to the Court of Criminal Appeals for the State Of
Texas At Capitol Station, AUSTIN, Texas, on the

__11__ day of __February__ __2015__

THOMAS A. WILDER, DISTRICT CLERK,
TARRANT COUNTY, FORT WORTH, TEXAS

LAUREN RABY

Deputy District Clerk

(Court of CRIMINAL APPEALS)
Cause No. _____
Filed in the Court of Criminal Appeals for the State of Texas,
at Capitol Station, AUSTIN, Texas, this

_____ day of _____, _____

_____ LOUISE PEARSON _____, Clerk

By _____, Deputy

# INDEX

Caption..........................................................................................................................................1

Applicant's Response to The Affidavit of Charley Valdez ................................................................2

Clerk's Certificate ..................................................................................................................:..........10

## *CAPTION*

THE STATE OF TEXAS                           §

COUNTY OF TARRANT                            §

At a term of the **213TH DISTRICT COURT** of Tarrant County, Texas, the Honorable **LOUIS E. STURNS** sitting as Judge of said court, the following proceedings were had, to-wit:

Writ Number: **C-213-010293-1011284-B**

EX PARTE:

RODNEY ELNESTO SMILEY

VS.

THE STATE OF TEXAS

1



FILED
THOMAS A WILDER DIST. CLERK
TARRANT COUNTY. TEXAS

FEB 10 2015

TIME _3:38_

BY_____ DEPUTY

| | | |
|---|---|---|
| *EX PARTE* | § | IN THE DISTRICT COURT |
| | § | 213TH JUDICIAL DISTRICT |
| RODNEY ELNESTO SMILEY | § | TARRANT COUNTY, TEXAS |

**APPLICANT'S RESPONSE TO THE
AFFIDAVIT OF CHARLEY VALDEZ**

TO THE HONORABLE JUDGE OF THIS COURT:

Applicant, RODNEY ELNESTO SMILEY, makes the following response to certain averments in the *Affidavit of Charley Valdez* filed on January 26, 2015, as follows:

1. On November 26, 2014, the Court of Criminal Appeals instructed this court to order the Texas Department of Criminal Justice's Office of the General Counsel to file an affidavit

> listing Applicant's sentence begin date and his initial discretionary mandatory supervision eligibility and review dates. The affidavit should indicate whether Applicant's initial review date changed, and if so, why the date was changed and the new date for review. The affidavit shall also indicate the dates of any discretionary mandatory supervision votes.

*Ex parte Smiley*, Case No. WR-31,454-003 (*Per Curiam* Order filed November 26, 2014). In compliance with the Court of Criminal Appeals' order, on December 11, 2014, this court ordered a representative from the Texas Department of Criminal Justice (TDCJ) to answer seven questions. *Ex parte Smiley*, Cause No. C-213-

**2**

010293-1011284-B (Memorandum and Order filed December 11, 2014). In his affidavit, Valdez avers:

> Because an offender may not be released to mandatory supervision until eligible to be released on all mandatory eligible offenses, TDCJ calculates the projected mandatory release date on the controlling mandatory eligible offense; in this instance cause number F-9402594-U had a projected mandatory supervision date of 5-12-2013, and his DMS notice was based on this date. On 1-29-2013, Applicant was provided notice that he was being reviewed for DMS on cause number 1011284D, and that he had until 2-28-2013 to provide any information to the Board of Pardons and Paroles (BPP) regarding his release. On 4-10-2013, the BPP voted to deny release to DMS with a next review date of 04/2014.
>
> On 12-12-2013, Applicant was provided notice that he was being reviewed for DMS, and that he had until 1-11-2014 to provide any information to the BPP regarding his release. On 2-18-2014, the BPP voted to deny release to DMS with a next review date of 02/2015.
>
> On 10-14-2014, Applicant was provided notice that he was being for DMS, and that he had until 11-15-2014 to provide any information to the BPP regarding his release. On 12-15-2014, the BPP voted to deny release to DMS with a next review date of 12/2015.

*Affidavit of Charley Valdez* at 3.[1]

2. Valdez's affidavit clearly demonstrates the predicament that Applicant and other similarly-situated inmates find themselves in due to a so-called policy or rule in which the BPP and TDCJ's Pardons and Paroles Division refuse to release an inmate (on *mandatory* mandatory supervision) until he is eligible for release on

---

[1] Valdez also averred that "Applicant's initial review date was not changed." *Affidavit of Charley Valdez* at 3.

all of his sentences.[2] Curiously, this policy or rule seems to affect only those inmates (like Applicant) who were admitted to *mandatory* mandatory-supervision release and thereafter committed a new *discretionary* mandatory-supervision offense. Because he had not achieved his *mandatory* mandatory-supervision release date of April 8, 2014,[3] on his old sentence, he remained incarcerated despite having become eligible for *discretionary* mandatory-supervision release on his new sentence back on September 21, 2010. See *Application for Writ of Habeas* (Exhibit D). After a series of negative BPP votes, Applicant's projected release is now scheduled for February 8, 2016, at which time he will have discharged his *discretionary* mandatory-supervision sentence and must be released on his *mandatory* mandatory-supervision sentence (for which he became originally eligible back on April 13, 2013). See *Application for Writ of Habeas Corpus* (Exhibit E-1).

3. Given the way that the BPP has heretofore successfully enforced its so-called policy or rule renders *discretionary* mandatory-supervision release an illusory concept for inmates like Applicant. See *Ex parte Bohannan*, 350 S.W.3d 116, 120 (Tex. Crim. App. 2011) (admonishing TDCJ's Pardons and Paroles

---

[2] This same predicament is also presented in *Ex parte Brandon*, Case No. WR-81,846-02, also pending before the Court of Criminal Appeals.

[3] Subsequently, Applicant was promoted in time-earning status and mandatory-supervision release date on his old sentence was advanced to May 13, 2013. See *Application for Writ of Habeas Corpus* at 8 (Exhibit E-1).

4

Division to obey the law); cf. *Ex parte Bohannan*, 350 S.W.3d at 121 (Keasler, J., concurring).

4. Wherefore, Applicant prays that this court enter appropriate findings of fact and conclusions of law and recommend to the Court of Criminal Appeals that the Application for Writ of Habeas Corpus be granted, and that Applicant immediately be released on *discretionary* mandatory supervision.

Respectfully submitted,

State Counsel for Offenders
Attorney for Applicant

Kenneth Nash
Texas Bar No. 14811030
P. O. Box 4005
Huntsville, TX 77342
Telephone no. 936-437-5291
Facsimile no. 936-437-5279
E-mail address: Ken.Nash@tdcj.texas.gov

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4(i)(3), Rules of Appellate Procedure, I certify that this computer-generated document is comprised of 773 words (excluding the matters listed in Rule 9.4(i)(1)).

Kenneth Nash

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Applicant's Response to the Affidavit of Charley Valdez* was served upon the attorney for the State, Andréa Jacobs, at 401 West Belknap, Fort Worth, TX 76196, by first-class United States mail on February 5th, 2015.

_Kenneth Nash_
Kenneth Nash

5

6



FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
FEB 1 0 2015
TIME _____3:38_____
BY_____RTR_____ DEPUTY

# State Counsel for Offenders

### A Division of Texas Department of Criminal Justice

P.O. Box 4005
Huntsville, TX 77342-4005
(936) 437-5203

February 4, 2015

Tarrant County District Clerk's Office
401 W. Belknap
Ft. Worth, Texas 76196

**CERTIFIED MAIL RETURN RECEIPT REQUESTED #7012 1010 0002 5674 5203**

Re:  *The State of Texas v. Rodney Elnesto Smiley*
     *Cause No. C-213-010293-1011284-B in the*
     *213th Judicial District Court of Tarrant County, Texas*

Dear Sir or Madam:

Enclosed, please find original and two copies of Applicant's Response to the Affidavit of Charley Valdez.

By copy of this letter, I am forwarding a copy of same to Ms. Andrea Jacobs, attorney for the state. Please return a file-stamped copy of the memorandum to the undersigned in the enclosed stamped envelope.

Thank you for your courtesies regarding this matter. If there are any questions, please contact undersigned counsel.

Sincerely,

Kenneth Nash
Appellate Section Chief
Phone: (936) 437-5291
Fax: (936) 437-5295
E-Mail Address: Kenneth.Nash@tdcj.texas.gov

1

7

Enclosures

cc:    Ms. Andrea Jacobs                **CMRRR #7012 1010 0002 5674 5210**
        Deputy District Attorney
        Tim Curry Criminal Justice Center
        401 West Belknap
        Fort Worth, Texas   76196

cc:    Mr. Rodney Elnesto Smiley
        TDCJ# 00693698
        Estes Unit
        1100 Highway 1807
        Venus, Texas   76084

8



CERTIFIED MAIL

7012 1010 0002 5674 5203

State Counsel for Offenders
P.O. Box 4005
Huntsville, TX 77342
ATTN: Appellate Section

213

Tarrant County District Clerk's Office
401 W. Belknap
Ft. Worth, Texas   76196

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

FEB 10 2015

TIME _____
BY _____ DEPUTY

Certified True Copy

THE STATE OF TEXAS                              §

COUNTY OF TARRANT                           §

I, Thomas A. Wilder, Clerk of the District Courts of Tarrant County, Texas, do hereby certify that the above and foregoing is a true and correct copy of ALL PROCEEDINGS HAD.

In Writ Number:   **C-213-010293-1011284-B**

EX PARTE:  **RODNEY ELNESTO SMILEY**
VS.
THE STATE OF TEXAS

as the same appears on the file and/or record in my said office.

GIVEN UNDER MY HAND and seal of Said Court at office in the City of Fort Worth, Tarrant County, Texas, this the _11_, day of _February_, A.D. _2015_.

THOMAS A. WILDER
CLERK, DISTRICT COURTS, TARRANT COUNTY, TEXAS

BY _Lauren Raby_
Deputy

**10**



# APPENDIX C

3rd Supplemental Clerk's Record

3,454-03

### 3rd SUPPLEMENTAL

# CLERK'S RECORD

## VOLUME **1** of **1**

Writ Number: **C-213-010293-1011284-B**

Filed In the **213TH DISTRICT COURT**
of Tarrant County, Texas
Hon. **LOUIS E. STURNS**, Presiding Judge

**RECEIVED IN
COURT OF CRIMINAL APPEALS**

**FEB 26 2015**

**EX PARTE: RODNEY ELNESTO SMILEY**

Abel Acosta, Clerk

VS.

THE STATE OF TEXAS

Appealed to the Court of Criminal Appeals
for the State Of Texas
at Capitol Station
AUSTIN, TEXAS

## ATTORNEY FOR THE APPELLANT

**KENNETH NASH, RETAINED
STATE COUNSEL FOR OFFENDERS
P.O. BOX 4005
HUNTSVILLE, TEXAS 77342-4005
PHONE:           936 437-5203
FAX:
SBOT:            14811030
Attorney for RODNEY ELNESTO SMILEY, Appellant**

Delivered to the Court of Criminal Appeals for the State Of
Texas At Capitol Station, AUSTIN, Texas, on the

**24** day of **February**, **2015**

THOMAS A. WILDER, DISTRICT CLERK,
TARRANT COUNTY, FORT WORTH, TEXAS

**CINDY DUTRA**
Deputy District Clerk

(Court of CRIMINAL APPEALS)
Cause No. _____
Filed in the Court of Criminal Appeals for the State of Texas,
at Capitol Station, AUSTIN, Texas, this

_____ day of _____, _____

_____ LOUISE PEARSON _____, Clerk

By _____, Deputy

# INDEX

Caption.................................................................................................................................1

State's Proposed Memorandum, Findings of Fact and Conclusions of Law ...........................................2

Order ..................................................................................................................................9

Clerk's Certificate...............................................................................................................10

# CAPTION

THE STATE OF TEXAS                    §

COUNTY OF TARRANT                    §

At a term of the **213TH DISTRICT COURT** of Tarrant County, Texas, the Honorable **LOUIS E. STURNS** sitting as Judge of said court, the following proceedings were had, to-wit:

Writ Number: **C-213-010293-1011284-B**

EX PARTE:

RODNEY ELNESTO SMILEY

VS.

THE STATE OF TEXAS

1

NO. WR-31,454-03
NO. C-213-010293-1011284-B

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
FEB 18 2015
TIME_____
BY_____ 3:56 _____ DEPUTY

| EX PARTE | § | IN THE 213th JUDICIAL |
|---|---|---|
|  | § |  |
|  | § | DISTRICT COURT OF |
|  | § |  |
| RODNEY ELNESTO SMILEY | § | TARRANT COUNTY, TEXAS |

## STATE'S PROPOSED MEMORANDUM, FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

The State proposes the following Memorandum, Findings of Fact and Conclusions of Law regarding the issues raised in the present Application for Writ of Habeas Corpus.

## MEMORANDUM

The applicant, RODNEY ELNESTO SMILEY ("Applicant"), alleges his confinement is illegal because (1) his right to due process was violated when the notice and vote of the Texas Department of Criminal Justice – Board of Pardons and Parole ("TDCJ") were made more than 2 years after he became eligible for mandatory supervision release and (2) his due course of law rights were violated when TDCJ's notice and vote were made more than 2 years after he became eligible for mandatory supervision. *See* Application, p. 6-9.

The Texas Court of Criminal Appeals has remanded this application back for resolution of whether Applicant was denied due process by the late vote to deny him

**2**

release to discretionary mandatory supervision. *See Ex parte Smiley*, No. WR-31,454-03 (Tex. Crim. App. Nov. 26, 2014) (not designated for publication).

In response to an order from this Court, Charley Valdez, Program Supervisor III for the Classifications and Records Department of the Texas Department of Criminal Justice – Correctional Institutions Division, has filed an affidavit addressing Applicant's claims. In light of Applicant's contentions and the evidence presented in the Writ Transcript, the Court should consider the following proposed findings of fact and conclusions of law:

## FINDINGS OF FACT

*General Facts*

1.   Applicant pled guilty, pursuant to a plea agreement, to the third degree felony offense of injury to a child with intent to cause bodily injury. *See* Judgment, No. 1011284D.

2.   In accordance with the plea agreement, the State waived the habitual offender notice and the trial court sentenced him to ten years confinement in the Texas Department of Criminal Justice – Institutional Division. *See* Judgment.

3.   Applicant did not appeal his conviction. *See* Criminal Docket Sheet, No. 1011284D.

4.   Applicant's first application for writ of habeas corpus was dismissed for non-compliance on August 6, 2014. *See Ex parte Smiley*, WR-31,454-02, No. C-213-010241-1011284-A (Tex. Crim. App. Aug. 6, 2014) (not designated for publication).

2

3

*"Late" Consideration for Mandatory Supervision*

5. Applicant's sentence date in this case, Cause Number 1011284D, was October 26, 2006 with pre-trial credit back to February 8, 2006. *See* Valdez Affidavit, p. 2.

6. Applicant received a twenty-five year sentence in Cause Number F-9402594-PU out of Dallas County on November 28, 1994, with credit back to June 28, 1994. *See* Valdez Affidavit, p. 2.

7. After revocation of parole in Cause Number F-9402594-PU on November 8, 2006, Applicant forfeited four years, four months, and eight days of time. *See* Valdez Affidavit, p. 2.

8. Applicant's maximum discharge date in Cause Number F-9402594-PU is November 4, 2023, twenty-nine years, four months, and eight days after June 28, 1994. *See* Valdez Affidavit, p. 2.

9. Based on Applicant's sentence and good time credits, Applicant was eligible for release to mandatory supervision on May 12, 2013, in Cause Number F-9402594-PU. *See* Valdez Affidavit, p. 3.

10. Because an offender may not be released to mandatory supervision until eligible for release on all offenses, TDCJ did not calculate Applicant's mandatory supervision eligibility in this case separate from his eligibility in Cause Number F-9402594-PU as that offense was the controlling mandatory offense. *See* Valdez Affidavit, p. 3.

11. It would be unreasonable that an offender is entitled to release to mandatory supervision if he is only eligible for release on one offense but not all offenses.

12. It is unreasonable for TDCJ to consider an offender for release to mandatory supervision on an offense if he is not eligible for release to mandatory supervision on all offenses because, even if granted release to mandatory supervision on one offense, Applicant will not be released to mandatory supervision unless eligible for release on all offenses.

13. Applicant was notified on January 29, 2013, that he would be reviewed for release to mandatory supervision and that he had until February 28, 2013, to provide any information in support of his release. *See* Valdez Affidavit, p. 3.

3

4

14. On April 10, 2013, Applicant was denied release to mandatory supervision. *See* Valdez Affidavit, p. 3.

15. On December 12, 2013, Applicant was given notice that he would be considered for release to mandatory supervision and that he had until January 11, 2014, to provide any information in support of his release. *See* Valdez Affidavit, p. 3.

16. On February 18, 2014, Applicant was denied release to mandatory supervision. *See* Valdez Affidavit, p. 3.

17. On October 14, 2014, Applicant was notified that he would be reviewed for release to mandatory supervision and that he had until November 15, 2014, to provide any information in support of his release. *See* Valdez Affidavit, p. 3.

18. On December 15, 2014, Applicant was denied release to mandatory supervision. *See* Valdez Affidavit, p. 3.

19. Applicant's next review date is December, 2015. *See* Valdez Affidavit, p. 3.

20. Applicant will currently discharge the sentence in this case on February 8, 2016. *See* Valdez Affidavit, p. 2.

## CONCLUSIONS OF LAW

*General Writ Law*

1. In a habeas corpus proceeding, the burden of proof is on the applicant. *Ex parte Rains*, 555 S.W.2d 478 (Tex. Crim. App. 1977). An applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001).

2. Relief may be denied if the applicant states only conclusions, and not specific facts. *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000). In addition, an applicant's sworn allegations alone are not sufficient to prove his claims. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

*"Late" Consideration for Mandatory Supervision*

3. Applicant has failed to prove that he was eligible for release to mandatory supervision in this case prior to May 12, 2013.

4. Applicant has failed to prove that his consideration for mandatory supervision in this case was late.

5. An inmate has a constitutional due process right to 30 days' advance notice before being considered for release to mandatory supervision. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).

6. Applicant received proper notice before he was considered for release to mandatory supervision.

7. Applicant has failed to prove that he was denied due process when TDCJ reviewed him for release to mandatory supervision in 2013.

8. This Court recommends that Applicant's first ground for relief be **DENIED**.

9. Applicant has failed to prove that he was eligible for release to mandatory supervision in this case prior to May 12, 2013.

10. Applicant has failed to prove that his consideration for mandatory supervision in this case was late.

11. An inmate has a constitutional due process right to 30 days' advance notice before being considered for release to mandatory supervision. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004).

12. Applicant received proper notice before he was considered for release to mandatory supervision.

13. Applicant has failed to prove that he was denied course of law when TDCJ reviewed him for release to mandatory supervision in 2013.

14. This Court recommends that Applicant's second ground for relief be **DENIED**.

6

WHEREFORE, the State prays that this Court adopt these Proposed Findings of Fact and Conclusions of Law and recommend that Applicant's grounds for relief be **DENIED**.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County

Andréa Jacobs
Assistant Criminal District Attorney
State Bar No. 24037596
401 West Belknap
Fort Worth, TX 76196-0201
Phone:    817/884-1687
Facsimile:   817/884-1672

## CERTIFICATE OF SERVICE

A true copy of the above has been mailed to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 on the 18TH day of February, 2015.

Andréa Jacobs

## CERTIFICATE OF COMPLIANCE

I certify that the total number of words in this State's Memorandum, Proposed Findings of Fact and Conclusions of Law is **1528** words as determined by Microsoft Office Word 2013.

Andréa Jacobs

6

7

EX PARTE  §  IN THE 213th JUDICIAL

§

§  DISTRICT COURT OF

§

RODNEY ELNESTO SMILEY  §  TARRANT COUNTY, TEXAS

## ORDER

The Court adopts the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommends that the relief RODNEY ELNESTO SMILEY ("Applicant") requests should be **DENIED**. The Court further orders and directs:

1.  The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2.  The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 (or to Applicant's most recent address), and to the post-conviction section of the Criminal District Attorney's Office.

SIGNED AND ENTERED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

1

8

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

FEB 24 2015

TIME _____ 1:26 _____

BY _____ SR _____ DEPUTY

NO. WR-31,454-03
NO. C-213-010293-1011284-B

EX PARTE                          §       IN THE 213th JUDICIAL
                                  §
                                  §       DISTRICT COURT OF
                                  §
RODNEY ELNESTO SMILEY             §       TARRANT COUNTY, TEXAS

## ORDER

The Court adopts the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommends that the relief RODNEY ELNESTO SMILEY ("Applicant") requests should be **DENIED**. The Court further orders and directs:

1.      The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2.      The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 (or to Applicant's most recent address), and to the post-conviction section of the Criminal District Attorney's Office.

SIGNED AND ENTERED this 24 day of Feb, _____, 2015.

_____
JUDGE PRESIDING

1

9

Certified True Copy

THE STATE OF TEXAS                          §

COUNTY OF TARRANT                           §


I, Thomas A. Wilder, Clerk of the District Courts of Tarrant County, Texas, do hereby certify that the above and foregoing is a true and correct copy of ALL PROCEEDINGS HAD.


In Writ Number:  **C-213-010293-1011284-B**


EX PARTE:  **RODNEY ELNESTO SMILEY**

VS.

THE STATE OF TEXAS


as the same appears on the file and/or record in my said office.


GIVEN UNDER MY HAND and seal of Said Court at office in the City of Fort Worth, Tarrant County, Texas, this the 24, day of February, A.D. 2015


_____THOMAS A. WILDER_____
CLERK, DISTRICT COURTS, TARRANT COUNTY, TEXAS


BY _____
Deputy


**10**

# APPENDIX D

# Clerk's Record

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2014

Abel Acosta, Clerk

31,454-03

# CLERK'S RECORD

## VOLUME **1** of **1**

### Writ Number: **C-213-010293-1011284-B**

Filed In the **213TH DISTRICT COURT**
of Tarrant County, Texas
Hon. **LOUIS E. STURNS**, Presiding Judge

### EX PARTE: RODNEY ELNESTO SMILEY

vs.

## THE STATE OF TEXAS

Appealed to the Court of Criminal Appeals
for the State Of Texas
at Capitol Station
AUSTIN, TEXAS

## ATTORNEY FOR THE APPELLANT

**KENNETH NASH, RETAINED**
**STATE COUNSEL FOR OFFENDERS**
**P.O. BOX 4005**
**HUNTSVILLE, TEXAS 77342-4005**
**PHONE:** (936) 437-5203
**FAX:**
**SBOT:** 14811030
**Attorney for RODNEY ELNESTO SMILEY, Appellant**

Delivered to the Court of Criminal Appeals for the State Of
Texas At Capitol Station, AUSTIN, Texas, on the

_23_ day of_September_, _2014_

THOMAS A. WILDER, DISTRICT CLERK,
TARRANT COUNTY, FORT WORTH, TEXAS

_Cindy Cohen_

~~LAUREN RABY~~  _Cindy Cohen_

Deputy District Clerk

(Court of CRIMINAL APPEALS)
Cause No. _____
Filed in the Court of Criminal Appeals for the State of Texas,
at Capitol Station, AUSTIN, Texas, this

_____ day of _____, _____

_____ LOUISE PEARSON _____, Clerk

By _____, Deputy

Application for Writ of Habeas Corpus
from Tarrant County, Texas

213TH DISTRICT COURT
Ex Parte:
RODNEY ELNESTO SMILEY

WRIT NO. C-213-010293-1011284-B

## CLERK'S SUMMARY SHEET

**APPLICANT'S NAME:**        RODNEY ELNESTO SMILEY

**OFFENSE:**        INJ CHILD/ELD/DISABL-BI

**PLEA:**        GUILTY

**CAUSE NO:**        1011284D

**SENTENCE:**        10 YEARS IDTDCJ

**SENTENCE DATE:**        10/26/2006

**TRIAL JUDGE'S NAME:**        HONORABLE ROBERT GILL

**APPEAL NO:**        NONE

**CITATION TO OPINION:**        N/A   S.W. N/A

**HEARING HELD:**        NO

**FINDINGS & CONCLUSIONS FILED:**        YES

**RECOMMENDATION:**        DISMISS AS MOOT

**HABEAS JUDGE'S NAME:**        HONORABLE LOUIS E STURNS

**NAME OF COUNSEL IF APPLICANT IS REPRESENTED: KENNETH NASH**

# INDEX

Caption .................................................................................................................................1

Application for Writ of Habeas Corpus ...........................................................................2

Waiver of Service ......................................................................................................52

State's Response to Application for Writ of Habeas Corpus ............................................53

State's Proposed Memorandum, Findings of Fact and Conclusions of Law .........................60

Order ......................................................................................................................65

Clerk's Certificate......................................................................................................66

THE STATE OF TEXAS                              §

COUNTY OF TARRANT                          §

At a term of the **213TH DISTRICT COURT** of Tarrant County, Texas, the Honorable **LOUIS E. STURNS** sitting as Judge of said court, the following proceedings were had, to-wit:

Writ Number: **C-213-010293-1011284-B**

EX PARTE:

**RODNEY ELNESTO SMILEY**

VS.

THE STATE OF TEXAS

1

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 25 2014

TIME _____ 1:46

BY_____ BK_____ DEPUTY

Case No. _____

(The Clerk of the convicting court will fill this line in.)

C-213-010293-1011284-B

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

APPLICATION FOR A WRIT OF HABEAS CORPUS
SEEKING RELIEF FROM FINAL FELONY CONVICTION
UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Rodney Elnesto Smiley

DATE OF BIRTH: July 12, 1964

PLACE OF CONFINEMENT: Sanders "Sandy" Estes Unit (TDCJ)

TDCJ-CID NUMBER: 00693698       SID NUMBER: 03361205

(1)    This application concerns (check all that apply):

☐ a conviction              ☐ parole

☐ a sentence                ☑ mandatory supervision

☐ time credit               ☐ out-of-time appeal or petition for
                              discretionary review

(2)    What district court entered the judgment of the conviction you want relief from?
       (Include the court number and county.)

       213th District Court of Tarrant County, Texas

(3)    What was the case number in the trial court?

       1011284D

(4)    What was the name of the trial judge?

       Robert K. Gill

Effective: January 1, 2014                1                                    2

(5)  Were you represented by counsel?  If yes, provide the attorney's name:

Yes; Joetta Keene

(6)  What was the date that the judgment was entered?

October 26, 2006

(7)  For what offense were you convicted and what was the sentence?

Injury to a Child; 10 years' confinement in Institutional Division, TDCJ

(8)  If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

_____

_____

(9)  What was the plea you entered? (Check one.)

☐ guilty-open plea      ☑ guilty-plea bargain
☐ not guilty            ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

_____

_____

(10)  What kind of trial did you have?

☑ no jury      ☐ jury for guilt and punishment
               ☐ jury for guilt, judge for punishment

2

3

(11) Did you testify at trial? If yes, at what phase of the trial did you testify?

_____

(12) Did you appeal from the judgment of conviction?

☐ yes                    ✔ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to? _____

(B) What was the case number? _____

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

_____

(D) What was the decision and the date of the decision? _____

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals?

☐ yes                    ✔ no

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number? _____

(B) What was the decision and the date of the decision? _____

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

✔ yes                    ☐ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? WR-454-02

3

4

(B)  What was the decision and the date of the decision?  _Dismissed; August 6, 2014_

(C)  Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15)  Do you currently have any petition or appeal pending in any other state or federal court?

☑ yes                    ☐ no

If you answered yes, please provide the name of the court and the case number:

291st District Court of Dallas County, Texas; Cause No. W94-02594-U(B)

(16)  If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                    ☐ no

If you answered yes, answer the following questions:

(A)  What date did you present the claim?  _____

(B)  Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

5

Not applicable, see Ex parte Long, No. WR-64,125-01, 2006 Tex. Crim. App.

Unpub. LEXIS 515 at *1-2 (per curiam order delivered March 8, 2006).

Moreover, Applicant is excused from the exhaustion requirement by Sec.

501.0081(c), Government Code.

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

6

**GROUND ONE:**

Applicant's right of due process was violated when TDCJ's notice was given and BPP's vote

was taken more than 2 years after Applicant became eligible for mandatory supervision release.

**FACTS SUPPORTING GROUND ONE:**

On November 28, 1994, Applicant was convicted of the offense of Theft of Property and sentenced to 25 years' confinement in the TDCJ-ID. See Exhibit A. On August 30, 2001, Applicant was released from custody on parole supervision. See Exhibit B-4. On October 26, 2006 (and while on parole supervision), Applicant was convicted of the offense of Injury to a Child and sentenced to 10 years' confinement in TDCJ-ID. See Exhibit C. On November 8, 2006, the Board of Pardons and Parole (BPP) revoked Applicant's parole. See Exhibit B-3. On December 7, 2006, TDCJ-ID determined Applicant's mandatory supervision release date on his old sentence as April 8, 2014 and his (discretionary) mandatory supervision release date on his new sentence as September 21, 2010. See Exhibit D. Subsequently, Applicant was promoted in time-earning status and his mandatory supervision release date on his old sentence was advanced to May 13, 2013. See Exhibit E-1. According to a document entitled NDMS Information dated January 14, 2013, well after Applicant achieved his eligibility for release on (discretionary) mandatory supervision, TDCJ notified Applicant that he would be reviewed for (discretionary)

6

mandatory supervision release. See Exhibits F and B-1. On April 10, 2013, a BPP parole panel issued its decision to deny mandatory supervision release (DMS). See Exhibits G and B-1.

TDCJ re-established Applicant's (discretionary) mandatory supervision release date on his new sentence as February 8, 2016. See Exhibit E-1.

According to TDCJ's original calculations, Applicant would have become eligible for (discretionary) mandatory supervision release on his new sentence on September 21, 2010. See Exhibit D. However, TDCJ and BPP delayed more than 2 years before taking any action. See Exhibit B-1. Applicant should be immediately released on mandatory supervision on his new sentence.

8

**GROUND TWO:**

Applicant's due-course-of-law-rights were violated when TDCJ's notice was given and BPP's

vote was taken more than 2 years after Applicant became eligible for mandatory supervision.

**FACTS SUPPORTING GROUND TWO:**

On November 28, 1994, Applicant was convicted of the offense of Theft of Property and

sentenced to 25 years' confinement in the TDCJ-ID. See Exhibit A. On August 30, 2001,

Applicant was released from custody on parole supervision. See Exhibit B-4. On October 26,

2006 (and while on parole supervision), Applicant was convicted of the offense of Injury to a

Child and sentenced to 10 years' confinement in TDCJ-ID. See Exhibit C. On November 8,

2006, the Board of Pardons and Parole (BPP) revoked Applicant's parole. See Exhibit B-3. On

December 7, 2006, TDCJ-ID determined Applicant's mandatory supervision release date on his

old sentence as April 8, 2014 and his (discretionary) mandatory supervision release date on his

new sentence as September 21, 2010. See Exhibit D. Subsequently, Applicant was promoted in

time-earning status and his mandatory supervision release date on his old sentence was advanced

to May 13, 2013. See Exhibit E-1. According to a document entitled NDMS Information dated

January 14, 2013, well after Applicant achieved his eligibility for release on (discretionary)

mandatory supervision, TDCJ notified Applicant that he would be reviewed for (discretionary)

8

9

mandatory supervision release. See Exhibits F and B-1. On April 10, 2013, a BPP parole panel issued its decision to deny mandatory supervision release (DMS). See Exhibits G and B-1.

TDCJ re-established Applicant's (discretionary) mandatory supervision release date on his new sentence as February 8, 2016. See Exhibit E-1.

According to TDCJ's original calculations, Applicant would have become eligible for (discretionary) mandatory supervision release on his new sentence on September 21, 2010. See Exhibit D. However, TDCJ and BPP delayed more than 2 years before taking any action. See Exhibit B-1. Applicant should be immediately released on mandatory supervision on his new sentence.

9

**10**

**GROUND THREE:**

_____

_____

**FACTS SUPPORTING GROUND THREE:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**11**

**GROUND FOUR:**

_____

_____

**FACTS SUPPORTING GROUND FOUR:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____



**GROUND:**

_____

_____

**FACTS SUPPORTING GROUND:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14

**15**

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

### VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

**OATH BEFORE A NOTARY PUBLIC**

STATE OF TEXAS

COUNTY OF Walker

Kenneth Nash_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS 20th DAY OF August , 2014 .

LISA MARIE MOSS
Notary Public
STATE OF TEXAS
My Comm. Exp. May 20, 2017

_____
Signature of Notary Public

16

17

**PETITIONER'S INFORMATION**

Petitioner's printed name: Kenneth Nash

State bar number, if applicable: 14811030

Address:   State Counsel for Offenders

P.O. Box 4005

Huntsville, TX 77342

Telephone: (936) 437-5291

Fax: (936) 437-5279


**INMATE'S DECLARATION**


I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.


Signed on _____, 20_____.


_____
Signature of Applicant / Petitioner (circle one)


17

**18**

**PETITIONER'S INFORMATION**

Petitioner's printed name: Kenneth Nash

Address: State Counsel for Offenders

P.O. Box 4005

Huntsville, TX 77342

Telephone: (936) 437-5291

Fax: (936) 437-5279

Signed on August 20, 20 14.

Kenneth Nash

Signature of Petitioner

18

**19**

FILED
THOMAS A WILDER DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 25 2014

TIME_____ _1:46_____
BY_____ _XR_____ DEPUTY

Case No. _____

*Ex parte*                                      In the 213th Judicial

                                                District Court of

*Rodney Elnesto Smiley*,                        Tarrant County, Texas
    Applicant

## Memorandum in Support of
## Application for a Writ of Habeas Corpus

Pursuant to Rule 73.1(c), Rules of Appellate Procedure, Rodney Elnesto

Smiley (hereinafter "Applicant"), files this memorandum in support of his

application for a writ of habeas corpus, as follows:

### *Facts*

On November 28, 1994, Applicant was convicted of the offense of Theft of

Property and sentenced to 25 years' confinement in the TDCJ-ID.  See Exhibit A.[1]

On August 30, 2001, Applicant was released from custody on parole supervision.

See Exhibit B-4.  On October 26, 2006, and while on parole supervision, Applicant

was convicted of the offense of Injury to a Child and sentenced to 10 years'

confinement in the TDCJ-ID.  See Exhibit C.  On November 8, 2006, the Board of

Pardons and Paroles (BPP) revoked Applicant's parole.  See Exhibit B-3.  On

December 7, 2006, the TDCJ determined Applicant's mandatory-supervision

---

[1] All references to exhibits herein are to those exhibits attached to the application for a writ of
habeas corpus.

**20**

release date on his old sentence as April 8, 2014, and his discretionary mandatory-supervision release date on his new sentence as September 21, 2010. See Exhibit D. Subsequently, Applicant was promoted in time-earning status, and his mandatory-supervision release date on his old sentence was advanced to May 13, 2013. See Exhibit E-1. On January 14, 2013, the TDCJ notified Applicant that he would be reviewed for discretionary mandatory-supervision release. See Exhibit F and B-1. On April 10, 2013, a parole panel of the BPP issued its decision to deny discretionary mandatory-supervision release (DMS). See Exhibits G and B-1. The TDCJ re-established Applicant's discretionary mandatory-supervision release date on his new sentence as February 8, 2016. See Exhibit E-1.

*Issues*

1. Did the Texas Department of Criminal Justice and the Board of Pardons and Paroles violate Applicant's right of due process because the TDCJ's notice was given, and the BPP's vote was taken, more than 2 years after Applicant became eligible for discretionary mandatory-supervision release on his new sentence?

2. Did the Texas Department of Criminal Justice and the Board of Pardons and Paroles violate Applicant's right of due course because the TDCJ's notice was given, and the BPP's vote was taken, more than 2 years after Applicant became eligible for discretionary mandatory-supervision release on his new sentence?

2

**21**

*Argument*

As a preliminary matter, habeas-corpus claims alleging illegal confinement arising after a felony conviction, but not contesting the validity of the judgments, may be raised under Art. 11.07, Code of Criminal Procedure. *Ex parte Geiken*, 28 S.W.3d 553, 556 (Tex. Crim. App. 2000).

An inmate has a constitutional due-process right to 30 days' advance notice of the specific month and year in which he will be reviewed for release on mandatory supervision so that he has sufficient opportunity to submit materials on his behalf. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding that notice to an inmate that he will be reviewed for mandatory-supervision release at some unspecified time before his projected release date does not constitute timely notice consistent with due process).[2] See also *Ex parte Shook*, 59 S.W.3d 174 (Tex. Crim. App. 2001); and *Ex parte Barry*, 109 S.W.3d 510 (Tex. Crim. App. 2003). An inmate, however, may not be released on discretionary mandatory supervision if a parole panel determines that: (1) his accrued good conduct time is not an accurate reflection of his potential for rehabilitation; and (2) his release would endanger the public. Section 508.149(b), Government Code.

> [T]he onus is on a parole panel to invoke the review process and make its findings, not on the eligible inmate to request a review. Without a

---

[2] The Court of Criminal Appeals has interpreted the due-course-of-law provision to provide the same procedural rights and protections as its federal analog. *Fleming v. State*, 341 S.W.3d 415, 416 (Tex. Crim. App. 2011) (Keasler, J., concurring).

3

**22**

parole panel's two statutory findings, made only after timely due process notice to the inmate giving him an opportunity to submit materials, the Texas Department of Criminal Justice-CID must release an eligible inmate to mandatory supervision.

*Ex parte Retzlaff*, 135 S.W.3d at 51. Accord *Ex parte Hill*, 208 S.W.3d 462, 464 (Tex. Crim. App. 2006).

As stated above, the TDCJ's notice and the BPP's vote (to deny mandatory-supervision release) occurred more than 2 years after Applicant's original discretionary mandatory-supervision release date of September 21, 2010; therefore, mandatory-supervision review process was untimely. Hence, Applicant is entitled to immediate release on mandatory supervision.[3]

*Prayer*

Wherefore, Applicant prays that the Court of Criminal Appeals grant his application for a writ of habeas corpus and order the Texas Department of Criminal Justice and the Board of Pardons and Paroles to immediately release him on mandatory supervision from the sentence imposed in Cause No. 1011284D for the felony offense of Injury to a Child.

---

[3] Applicant's case is distinguishable from *Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008) wherein the Court of Criminal Appeals resolved the "complex problem" involving a sentence ineligible for mandatory-supervision release stacked upon a sentence eligible for mandatory-supervision release. In contrast, Applicant's old sentences and his new sentence are all eligible for mandatory-supervision release.

**23**

Respectfully submitted,

State Counsel for Offenders
Attorney for Applicant

*Kenneth Nash*

Kenneth Nash
Texas Bar No. 14811030
P. O. Box 4005
Huntsville, TX 77342
Telephone no. 936-437-5291
Facsimile no. 936-437-5279
E-mail address: ken.nash@tdcj.texas.gov

## Certificate of Compliance

In compliance with Rule 73.1(f), Rules of Appellate Procedure, I certify that the foregoing computer-generated *Memorandum in Support of Application for a Writ of Habeas Corpus* is comprised of <u>837</u> words.

*Kenneth Nash*

Kenneth Nash

## Certificate of Service

I certify that a true and correct copy of the foregoing *Memorandum in Support of Application for a Writ of Habeas Corpus* was served upon opposing counsel noted below by first-class United States mail on August 21, 2014:

Joe Shannon, Jr.
Tarrant County Criminal District Attorney
Tim Curry Criminal Justice Center
401 West Belknap
Fort Worth, TX 76196

*Kenneth Nash*

Kenneth Nash

5

**24**

(REV. 10/16/91)

F-9402594-PU

THE STATE OF TEXAS

VS.

RODNEY ELNESTO SMILEY

IN THE 291ST JUDICIAL DISTRICT

COURT                    OF

DALLAS COUNTY, TEXAS

JUDGMENT ON PLEA OF GUILTY OR NOLO CONTENDERE BEFORE COURT
WAIVER OF JURY TRIAL

JULY          TERM, A.D., 1994

JUDGE PRESIDING:  GERRY MEIER

DATE OF JUDGMENT: 11/28/94

ATTORNEY
FOR STATE:  B COX

ATTORNEY
FOR DEFENDANT: RICK MAGNIS

OFFENSE
CONVICTED OF:      THEFT OF PROPERTY OF THE VALUE OF $750 OR MORE, BUT LESS
                   THAN $20,000

    DEGREE: THIRD          (ENHANCED)     DATE OFFENSE COMMITTED:    02/08/94

CHARGING
INSTRUMENT: INDICTMENT

PLEA: GUILTY

TERMS OF PLEA
BARGAIN (IN DETAIL):  OPEN

PLEA TO ENHANCEMENT
PARAGRAPH(S):    PLED TRUE TO 2ND&3RD

FINDINGS ON
ENHANCEMENT: FOUND TRUE

FINDINGS ON USE
OF DEADLY WEAPON:       NONE

DATE SENTENCE
IMPOSED:          11/28/94

COSTS: YES

PUNISHMENT AND
PLACE OF          25 YEARS
CONFINEMENT: CONFINEMENT   IN   THE  INSTITUTIONAL DIVISION     DATE TO
             OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE     COMMENCE:   11/28/94
             AND A FINE OF - 0 -

TIME CREDITED: 062894-112894

RESTITUTION/REPARATION: NO

CONCURRENT UNLESS OTHERWISE SPECIFIED.

        ON THIS DAY, SET FORTH ABOVE, THE ABOVE STYLED  AND NUMBERED CAUSE  CAME
TO  TRIAL. THE STATE OF TEXAS AND DEFENDANT APPEARED BY AND THROUGH   THE  ABOVE
NAMED ATTORNEYS AND ANNOUNCED READY FOR TRIAL.  DEFENDANT APPEARED IN PERSON IN

H                                                          VOL. 198   PAGE 187

EXHIBIT

A

25

OPEN COURT. WHERE DEFENDANT WAS NOT REPRESENTED BY COUNSEL, DEFENDANT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY WAIVED THE RIGHT TO REPRESENTATION BY COUNSEL. DEFENDANT, IN PERSON AND IN WRITING IN OPEN COURT HAVING WAIVED HIS RIGHT OF TRIAL BY JURY, AND WHERE SHOWN ABOVE THAT THE CHARGING INSTRUMENT WAS BY INFORMATION INSTEAD OF INDICTMENT, THE DEFENDANT DID, WITH THE CONSENT AND APPROVAL OF HIS ATTORNEY, OF THE ATTORNEY FOR THE STATE, AND THE COURT, WAIVE HIS RIGHT TO PROSECUTION BY INDICTMENT AND AGREE TO BE TRIED ON AN AFFIDAVIT AND INFORMATION; ALL SUCH WAIVERS, AGREEMENTS AND CONSENTS BEING IN WRITING AND FILED IN THE PAPERS OF THIS CAUSE PRIOR TO THE DEFENDANT ENTERING HIS PLEA HEREIN, WAS DULY ARRAIGNED AND IN OPEN COURT ENTERED THE ABOVE PLEA TO THE CHARGE CONTAINED IN THE CHARGING INSTRUMENT, AS SHOWN ABOVE. DEFENDANT WAS ADMONISHED BY THE COURT OF THE CONSEQUENCES OF THE SAID PLEA AND DEFENDANT PERSISTED IN ENTERING SAID PLEA, AND IT PLAINLY APPEARING TO THE COURT THAT DEFENDANT IS MENTALLY COMPETENT AND SAID PLEA IS FREE AND VOLUNTARY THE SAID PLEA WAS ACCEPTED BY THE COURT AND IS NOW ENTERED OF RECORD AS THE PLEA HEREIN OF DEFENDANT. DEFENDANT IN OPEN COURT, IN WRITING HAVING WAIVED THE READING OF THE CHARGING INSTRUMENT, AS SHOWN ABOVE, THE APPEARANCE, CONFRONTATION, AND CROSS-EXAMINATION OF WITNESSES, AND AGREED THAT THE EVIDENCE MAY BE STIPULATED AND CONSENTED TO THE INTRODUCTION OF TESTIMONY ORALLY, BY JUDICIAL CONFESSION, BY AFFIDAVITS, WRITTEN STATEMENTS OF WITNESSES AND ANY OTHER DOCUMENTARY EVI- DENCE AND SUCH WAIVER AND CONSENT HAVING BEEN APPROVED BY THE COURT IN WRITING AND FILED IN THE PAPERS OF THE CAUSE; AND, THE COURT HAVING HEARD DEFENDANT'S WAIVER OF THE READING OF THE CHARGING INSTRUMENT, AS SHOWN ABOVE, DEFENDANT'S PLEA THERETO, THE EVIDENCE SUBMITTED, AND THE ARGUMENT OF COUNSEL, IS OF THE OPINION FROM THE EVIDENCE SUBMITTED THAT DEFENDANT IS GUILTY OF THE OFFENSE AS SHOWN ABOVE AND THAT THE OFFENSE WAS COMMITTED BY SAID DEFENDANT ON THE DATE SET FORTH ABOVE. THE COURT FURTHER MAKES ITS FINDING AS TO DEADLY WEAPON AND RESTITUTION OR REPARATION AS SET FORTH ABOVE.

AND WHEN SHOWN ABOVE THAT THE CHARGING INSTRUMENT CONTAINS ENHANCE- MENT PARAGRAPH(S), WHICH WERE NOT WAIVED OR DISMISSED, THE COURT, AFTER HEARING THE DEFENDANT'S PLEA TO SAID PARAGRAPH(S), AS SET OUT ABOVE AND AFTER HEARING FURTHER EVIDENCE ON THE ISSUE OF PUNISHMENT, THE COURT MAKES ITS FINDING AS SET OUT ABOVE; IF TRUE, THE COURT IS OF THE OPINION AND FINDS DEFENDANT HAS BEEN HERETOFORE CONVICTED OF SAID OFFENSE(S) ALLEGED IN THE SAID ENHANCEMENT PARAGRAPH(S) AS MAY BE SHOWN ABOVE.

AND WHEN SHOWN ABOVE THAT THERE WAS A PLEA BARGAIN AGREEMENT, THE DEFENDANT WAS INFORMED AS TO WHETHER THE COURT WOULD FOLLOW OR REJECT SUCH AGREEMENT AND IF THE COURT REJECTED SUCH AGREEMENT THE DEFENDANT WAS GIVEN AN OPPORTUNITY TO WITHDRAW HIS PLEA PRIOR TO ANY FINDING ON THE PLEA.

WHEN IT IS SHOWN ABOVE THAT RESTITUTION HAS BEEN ORDERED BUT THE COURT DETERMINES THAT THE INCLUSION OF THE VICTIM'S NAME AND ADDRESS IN THE JUDGMENT IS NOT IN THE BEST INTEREST OF THE VICTIM, THE PERSON OR AGENCY WHOSE NAME AND ADDRESS IS SET OUT IN THIS JUDGEMENT WILL ACCEPT AND FORWARD THE RESTITUTION PAYMENTS TO THE VICTIM.

AND WHEN IT IS SHOWN BELOW THAT PAYMENT OF THE COSTS OF LEGAL SERVICES PROVIDED TO THE DEFENDANT IN THIS CAUSE HAS BEEN ORDERED, THE COURT FINDS THAT THE DEFENDANT HAS THE FINANCIAL RESOURCES TO ENABLE THE DEFENDANT TO OFFSET SAID COSTS IN THE AMOUNT ORDERED.

THEREUPON THE SAID DEFENDANT WAS ASKED BY THE COURT WHETHER HE HAD ANYTHING TO SAY WHY SAID SENTENCE SHOULD NOT BE PRONOUNCED AGAINST HIM, AND HE ANSWERED NOTHING IN BAR THEREOF, AND IT APPEARING TO THE COURT THAT DEFENDANT IS MENTALLY COMPETENT AND UNDERSTANDING OF THE PROCEEDINGS.

IT IS, THEREFORE, CONSIDERED AND ORDERED BY THE COURT, IN THE PRESENCE OF DEFENDANT, AND HIS ATTORNEY, THAT SAID JUDGMENT AS SET FORTH ABOVE, IS HEREBY IN ALL THINGS APPROVED AND CONFIRMED, AND THAT SAID DEFENDANT BE ADJUDGED GUILTY OF THE OFFENSE AS SHOWN ABOVE, AND THAT SAID DEFENDANT BE PUNISHED IN ACCORDANCE WITH THE PUNISHMENT SET FORTH ABOVE, AND DEFENDANT IS SENTENCED TO A TERM OF IMPRISONMENT OR FINE OR BOTH, AS SET FORTH ABOVE, AND DEFENDANT SHALL BE DELIVERED BY THE SHERIFF TO THE DIRECTOR OF THE INSTITU- TIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OR OTHER PERSON LEGALLY AUTHORIZED TO RECEIVE SUCH CONVICTS FOR THE PUNISHMENT ASSESSED HEREIN, AND SAID DEFENDANT SHALL BE CONFINED FOR THE ABOVE-NAMED TERM IN ACCOR-

26

IANCE WITH THE PROVISION ⬤ LAW GOVERNING SUCH PUNI ⬤ TS. IT IS FUF
IRDERED THAT THE DEFENDAI ⬤ Y THE FINE, COURT COST, ⬤ TS AND EXPENSES
LEGAL SERVICE PROVIDED BY THE COURT APPOINTED ATTORNEY IN THIS CAUSE, IF A
IND RESTITUTION OR REPARATION, AS SET FORTH HEREIN.

DEFENDANT IS HEREBY ORDERED REMANDED TO JAIL UNTIL SAID SHERIFF C
IBEY THE DIRECTIONS OF THIS JUDGMENT.

FOLLOWING THE DISPOSITION OF THIS CAUSE THE DEFENDANT'S FINGERPRIN
IAS, IN OPEN COURT, PLACED UPON A CERTIFICATE OF FINGERPRINT. SAID CERTIFICATE
S ATTACHED HERETO AND IS INCORPORATED BY REFERENCE AS A PART OF THIS
IUDGMENT.

COURT COSTS IN THE AMOUNT OF $124.50

_____
JUDGE PRESIDING

**27**

JUDGMENT
CERTIFICATE OF THUMBPRINT

CAUSE NO. F94-02594 PU

THE STATE OF TEXAS

VS.

Smiley, Rodney E.

IN THE 291st

DISTRICT COURT OF

DALLAS COUNTY, TEXAS

Right
Thumb*

Defendant's _R_ hand

THIS IS TO CERTIFY THAT THE FINGERPRINTS ABOVE ARE THE ABOVE-
NAMED DEFENDANT'S FINGERPRINTS TAKEN AT THE TIME OF DISPOSITION
OF THE ABOVE STYLED AND NUMBERED CAUSE.

DONE IN COURT THIS 28 DAY OF Nov , 199 @ 10 am

259
BAILIFF/DEPUTY SHERIFF

*Indicate here if print other than defendant's right thumbprint
is placed in box:

___ left thumbprint        ___ left/right index finger

___ other, _____

28

THE STATE OF TEXAS:

COUNTY OF DALLAS    :

I, BILL LONG, CLERK OF THE DISTRICT COURTS WITHIN AND FOR
THE STATE AND COUNTY AFORESAID, DO HEREBY CERTIFY THAT THE ABOVE
AND FOREGOING IS A TRUE AND CORRECT COPY OF JUDGMENT AND
IMPOSITION OF SENTENCE IN CAUSE NO. F-9402594-PU    , ENTITLED THE
STATE OF TEXAS VS. RODNEY ELNESTO SMILEY
AS THE SAME APPEARS ON RECORD IN VOL. 198     PAGE 187
NOW ON FILE IN MY OFFICE.

GIVEN UNDER MY HAND AND SEAL OF OFFICE IN DALLAS COUNTY,
TEXAS, THIS 29TH DAY OF  NOVEMBER, 1994

BILL LONG
DISTRICT CLERK
DALLAS COUNTY, TEXAS

BY: *Norma Houston*

NORMA HOUSTON
DEPUTY

**29**

SSUKA25                 TEXAS DEPARTMENT OF CRIMINAL JUSTICE          10:21:52
                         CLEMENCY AND PAROLE SYSTEM                   05/13/14
                           MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698          SID NUMBER: 03361205       PIA NUMBER: 000000
PP NUMBER:                    NAME: SMILEY,RODNEY ELNESTO
URRENT STATUS: CURRENTLY IN ID

| EL | ACTN DATE | PROCESS | ACTN | TYPE OF ACTION |
|---|---|---|---|---|
| _ | 02-19-2014 | CURRENTLY AN INMATE | STLTR | TP DATE STATUS LTR |
| _ | 02-18-2014 | CURRENTLY AN INMATE | DMS | RECORD HAS NO ACTION TYPE |
| _ | 12-03-2013 | REVIEW PROCESS | PIMR | RECORD HAS NO ACTION TYPE |
| _ | 12-02-2013 | CURRENTLY AN INMATE | NDMS | NOTICE OF DMS REVIEW |
| _ | 04-11-2013 | CURRENTLY AN INMATE | STLTR | TP DATE STATUS LTR |
| _ | 04-10-2013 | CURRENTLY AN INMATE | DMS | RECORD HAS NO ACTION TYPE |
| _ | 01-14-2013 | REVIEW PROCESS | NDMS | NOTICE OF DMS REVIEW |
| _ | 12-18-2012 | REVIEW PROCESS | PIMR | RECORD HAS NO ACTION TYPE |
| _ | 12-13-2012 | CURRENTLY AN INMATE | STLTR | TP DATE STATUS LTR |
| _ | 12-12-2012 | CURRENTLY AN INMATE | SA | RECORD HAS NO ACTION TYPE |
| _ | 11-13-2012 | REVIEW PROCESS | PIMR | RECORD HAS NO ACTION TYPE |
| _ | 06-05-2012 | REVIEW PROCESS | NTO | BOARD VOTE |
| _ | 06-05-2012 | REVIEW PROCESS | CASEP | MONTHLY CASE PULL |

PF1=HELP        PF2=BOARD ACTIONS MENU   PF5=DETAIL         PF3=CAPS MENU
PF6=REFRESH     PF7=SCROLL BACK          PF8=SCROLL FORWARD
PF10=CROSS REF  PF12=TDCJ MENU.          CLEAR=EXIT
HERE ARE MORE MINUTES RECORDS TO BE DISPLAYED

EXHIBIT
B-1

30

SSUKA25              TEXAS DEPARTMENT OF CRIMINAL JUSTICE           10:21:59
                       CLEMENCY AND PAROLE SYSTEM                   05/13/14
                         MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698          SID NUMBER: 03361205        PIA NUMBER: 000000
PP NUMBER:                    NAME: SMILEY,RODNEY ELNESTO
CURRENT STATUS: CURRENTLY IN ID
SEL ACTN DATE           PROCESS            ACTN        TYPE OF ACTION
    06-05-2012  REVIEW PROCESS             CASEP   MONTHLY CASE PULL
    11-03-2011  CURRENTLY AN INMATE        STLTR   TP DATE STATUS LTR
    11-02-2011  CURRENTLY AN INMATE        NR      RECORD HAS NO ACTION TYPE
    06-07-2011  REVIEW PROCESS             NTO     BOARD VOTE
    06-07-2011  REVIEW PROCESS             CASEP   MONTHLY CASE PULL
    10-08-2010  CURRENTLY AN INMATE        STLTR   TP DATE STATUS LTR
    10-07-2010  CURRENTLY AN INMATE        NR      RECORD HAS NO ACTION TYPE
    05-04-2010  REVIEW PROCESS             NTO     BOARD VOTE
    05-04-2010  REVIEW PROCESS             CASEP   MONTHLY CASE PULL
    09-15-2009  CURRENTLY AN INMATE        STLTR   TP DATE STATUS LTR
    09-14-2009  CURRENTLY AN INMATE        NR      RECORD HAS NO ACTION TYPE
    04-08-2009  REVIEW PROCESS             NTO     BOARD VOTE
    04-07-2009  REVIEW PROCESS             CASEP   MONTHLY CASE PULL
PF1=HELP        PF2=BOARD ACTIONS MENU  PF5=DETAIL          PF3=CAPS MENU
PF6=REFRESH     PF7=SCROLL BACK         PF8=SCROLL FORWARD
PF10=CROSS REF  PF12=TDCJ MENU          CLEAR=EXIT
THERE ARE MORE MINUTES RECORDS TO BE VIEWED

EXHIBIT
B-2

31

SSUKA25       TEXAS DEPARTMENT OF CRIMINAL JUSTICE      10:22:01
              CLEMENCY AND PAROLE SYSTEM             05/13/14
                  MINUTES BROWSE SCREEN

DCJID NUMBER: 00693698      SID NUMBER: 03361205      PIA NUMBER: 000000
PP NUMBER:              NAME: SMILEY,RODNEY ELNESTO
URRENT STATUS: CURRENTLY IN ID

| EL | ACTN DATE | PROCESS | ACTN | TYPE OF ACTION |
|----|-----------|---------|------|----------------|
| _ | 04-07-2009 | REVIEW PROCESS | CASEP | MONTHLY CASE PULL |
| _ | 09-05-2008 | CURRENTLY AN INMATE | STLTR | TP DATE STATUS LTR |
| _ | 09-04-2008 | CURRENTLY AN INMATE | NR | RECORD HAS NO ACTION TYPE |
| _ | 06-04-2008 | REVIEW PROCESS | NTO | BOARD VOTE |
| _ | 06-03-2008 | REVIEW PROCESS | CASEP | MONTHLY CASE PULL |
| _ | 10-11-2007 | CURRENTLY AN INMATE | STLTR | TP DATE STATUS LTR |
| _ | 10-10-2007 | CURRENTLY AN INMATE | NR | RECORD HAS NO ACTION TYPE |
| _ | 11-21-2006 | REVIEW PROCESS | NTO | BOARD VOTE |
| _ | 11-19-2006 | REVIEW PROCESS | CASEP | CALCULATE STATUS |
| _ | 11-17-2006 | CURRENTLY AN INMATE | STAFF | PAROLE VIOLATOR |
| _ | 11-08-2006 | REVOCATION | PROC | REVOKE NEW CONVICTION TO TEX |
| _ | 11-08-2006 | REVOCATION | APP | REVOKE NEW CONVICTION TO TEX |
| _ | 03-02-2006 | ARREST WARRANT | REC | PRE REVOCATION |

>F1=HELP       PF2=BOARD ACTIONS MENU    PF5=DETAIL         PF3=CAPS MENU
>F6=REFRESH     PF7=SCROLL BACK       PF8=SCROLL FORWARD
>F10=CROSS REF   PF12=TDCJ MENU       CLEAR=EXIT
IERE ARE MORE MINUTES RECORDS TO BE VIEWED

EXHIBIT

B-3

32

SSUKA25              TEXAS DEPARTMENT OF CRIMINAL JUSTICE              10:22:02
                       CLEMENCY AND PAROLE SYSTEM                      05/13/14
                          MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698          SID NUMBER: 03361205          PIA NUMBER: 000000
PP NUMBER:                   NAME: SMILEY,RODNEY ELNESTO
URRENT STATUS: CURRENTLY IN ID
EL ACTN DATE            PROCESS            ACTN          TYPE OF ACTION
_   03-02-2006  ARREST WARRANT             REC      PRE REVOCATION
_   11-21-2003  CURRENTLY A PAROLEE OR MS  NOTE     TP DATE STATUS LTR
_   08-08-2003  CURRENTLY A PAROLEE OR MS  STAFF    CHANGE PROCESS TYPE-GENERATE
_   08-07-2003  ARREST WARRANT             WDWA     PRE REVOCATION
_   07-31-2003  REVOCATION HEARING         DENY     CONTINUE SUPERVISION
_   06-25-2003  ARREST WARRANT             REC      PRE REVOCATION
_   09-21-2001  CURRENTLY A PAROLEE OR MS  NCR      INSTATE
_   09-18-2001  CURRENTLY A PAROLEE OR MS  PARL     INSTATE
_   08-30-2001  REVIEW PROCESS             PROC     INSTATE
_   07-03-2001  REVIEW PROCESS             NCR      NCR
_   01-12-2001  REVIEW PROCESS             STLTR    TP DATE STATUS LTR
_   01-11-2001  REVIEW PROCESS             FI-6R    BOARD FI
_   09-06-2000  REVIEW PROCESS             NTO      BOARD VOTE
PF1=HELP         PF2=BOARD ACTIONS MENU   PF5=DETAIL           PF3=CAPS MENU
F6=REFRESH       PF7=SCROLL BACK          PF8=SCROLL FORWARD
F10=CROSS REF    PF12=TDCJ MENU           CLEAR=EXIT
IERE ARE MORE MINUTES RECORDS TO BE VIEWED

EXHIBIT

B-4

**33**

SSUKA25                   TEXAS DEPARTMENT OF CRIMINAL JUSTICE            10:22:04
                          CLEMENCY AND PAROLE SYSTEM                      05/13/14
                             MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698          SID NUMBER: 03361205         PIA NUMBER: 000000
PP NUMBER:                      NAME: SMILEY,RODNEY ELNESTO
CURRENT STATUS: CURRENTLY IN ID
EL ACTN DATE              PROCESS             ACTN          TYPE OF ACTION
_   09-06-2000   REVIEW PROCESS              NTO      BOARD VOTE
_   09-05-2000   REVIEW PROCESS              CASEP    MONTHLY CASE PULL
_   11-24-1999   CURRENTLY AN INMATE         STLTR    TP DATE STATUS LTR
_   11-23-1999   CURRENTLY AN INMATE         NR       RECORD HAS NO ACTION TYPE
_   09-08-1999   REVIEW PROCESS              NTO      BOARD VOTE
_   09-07-1999   REVIEW PROCESS              CASEP    MONTHLY CASE PULL
_   11-12-1998   CURRENTLY AN INMATE         STLTR    TP DATE STATUS LTR
_   11-10-1998   CURRENTLY AN INMATE         NR       RECORD HAS NO ACTION TYPE
_   07-09-1998   REVIEW PROCESS              NTO      BOARD VOTE
_   07-08-1998   REVIEW PROCESS              NTO      BOARD VOTE
_   07-07-1998   REVIEW PROCESS              CASEP    MONTHLY CASE PULL
_   05-14-1996   CURRENTLY AN INMATE         STLTR    TP DATE STATUS LTR
_   05-13-1996   CURRENTLY AN INMATE         NR       RECORD HAS NO ACTION TYPE
F1=HELP         PF2=BOARD ACTIONS MENU   PF5=DETAIL            PF3=CAPS MENU
F6=REFRESH      PF7=SCROLL BACK          PF8=SCROLL FORWARD
F10=CROSS REF   PF12=TDCJ MENU           CLEAR=EXIT
ERE ARE MORE MINUTES RECORDS TO BE VIEWED

EXHIBIT

B-5

34

SSUKA25              TEXAS DEPARTMENT OF CRIMINAL JUSTICE            10:22:06
                     CLEMENCY AND PAROLE SYSTEM                      05/13/14
                          MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698          SID NUMBER: 03361205        PIA NUMBER: 000000
PP NUMBER:                      NAME: SMILEY,RODNEY ELNESTO
URRENT STATUS: CURRENTLY IN ID
EL ACTN DATE            PROCESS            ACTN         TYPE OF ACTION
_   05-13-1996  CURRENTLY AN INMATE        NR     RECORD HAS NO ACTION TYPE
_   01-16-1996  REVIEW PROCESS             NTO    BOARD VOTE
_   01-15-1996  REVIEW PROCESS             CASEP  CALCULATE STATUS
_   03-18-1995  CURRENTLY AN INMATE        STAFF  PAROLE VIOLATOR-NEW TDC NUMB
_   02-16-1995  REVOCATION                 APP    REVOKE NEW CONVICTION TO TEX
_   02-15-1995  REVOCATION                 PROC   REVOKE NEW CONVICTION TO TEX
_   08-24-1994  CURRENTLY A PAROLEE OR MS  NOTE   TP DATE STATUS LTR
_   02-02-1993  CURRENTLY A PAROLEE OR MS  NA     PAROLE REVIEW
_   12-22-1992  CURRENTLY A PAROLEE OR MS  PARL   INSTATE
_   10-15-1992  REVIEW PROCESS             PROC   INSTATE
:   06-08-1992  REVIEW PROCESS             APP    PRE-PAROLE TRANSFER
_   09-27-1991  REVIEW PROCESS             FI-1   PRE-PAROLE TRANSFER
_   09-04-1991  REVIEW PROCESS             NTO    BOARD VOTE
PF1=HELP        PF2=BOARD ACTIONS MENU   PF5=DETAIL        PF3=CAPS MENU
PF6=REFRESH     PF7=SCROLL BACK          PF8=SCROLL FORWARD
PF10=CROSS REF  PF12=TDCJ MENU           CLEAR=EXIT
IERE ARE MORE MINUTES RECORDS TO BE VIEWED

EXHIBIT
B-6

35

```
SSUKA25            TEXAS DEPARTMENT OF CRIMINAL JUSTICE          10:22:07
                    CLEMENCY AND PAROLE SYSTEM                   05/13/14
                       MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698        SID NUMBER: 03361205       PIA NUMBER: 000000
PP NUMBER:                    NAME: SMILEY,RODNEY ELNESTO
CURRENT STATUS: CURRENTLY IN ID
EL ACTN DATE            PROCESS           ACTN         TYPE OF ACTION
_  09-04-1991   REVIEW PROCESS            NTO     BOARD VOTE
_  09-04-1991   REVIEW PROCESS            CASEP   MONTHLY CASE PULL
_  08-28-1991   CURRENTLY AN INMATE       STAFF   PAROLE VIOLATOR-NEW TDC NUMB
_  08-22-1991   REVOCATION                PROC    REVOKE NEW CONVICTION TO TEX
_  10-09-1990   CURRENTLY A PAROLEE OR MS NOTE    CHANGE PROCESS TYPE-GENERATE
_  10-09-1990   REVOCATION HEARING        WDFI    000 - TYPE ACTION NOT FOUND
_  10-08-1990   REVOCATION HEARING        ABSC    RETURNED FROM ABSCONDER TO A
_  04-02-1990   REVOCATION HEARING        ABSC    DECLARED ABSCONDER
_  04-02-1990   REVOCATION HEARING        APP     000 - TYPE ACTION NOT FOUND
_  04-02-1990   REVOCATION HEARING        REC     000 - TYPE ACTION NOT FOUND
_  02-20-1990   CURRENTLY A PAROLEE OR MS NA      PAROLE REVIEW
_  01-09-1990   CURRENTLY A PAROLEE OR MS NA      PAROLE REVIEW
_  04-20-1989   CURRENTLY A PAROLEE OR MS PARL    INSTATE
PF1=HELP        PF2=BOARD ACTIONS MENU   PF5=DETAIL         PF3=CAPS MENU
PF6=REFRESH     PF7=SCROLL BACK          PF8=SCROLL FORWARD
PF10=CROSS REF  PF12=TDCJ MENU           CLEAR=EXIT
THERE ARE MORE MINUTES RECORDS TO BE VIEWED
```

EXHIBIT

B-7

36

```
SSUKA25              TEXAS DEPARTMENT OF CRIMINAL JUSTICE         10:22:09
                      CLEMENCY AND PAROLE SYSTEM                  05/13/14
                        MINUTES BROWSE SCREEN
DCJID NUMBER: 00693698        SID NUMBER: 03361205      PIA NUMBER: _____
PP NUMBER:                    NAME: SMILEY,RODNEY ELNESTO
URRENT STATUS: _____
EL ACTN DATE            PROCESS            ACTN          TYPE OF ACTION
_  04-20-1989  CURRENTLY A PAROLEE OR MS  PARL    INSTATE
_  04-19-1989  REVIEW PROCESS             PROC    INSTATE
_  11-03-1988  REVIEW PROCESS             APP     INSTATE
_  11-03-1988  REVIEW PROCESS             REC     INSTATE
_  11-02-1988  REVIEW PROCESS             FI-2    000 - TYPE ACTION NOT FOUND
_  11-02-1988  REVIEW PROCESS             NTO     COMMISSIONER FI
_  10-13-1988  REVIEW PROCESS             CASEP   MONTHLY CASE PULL
_  10-06-1988  CURRENTLY AN INMATE        NOTE    CALCULATE STATUS-GENERATED
```

```
PF1=HELP        PF2=BOARD ACTIONS MENU   PF5=DETAIL           PF3=CAPS MENU
PF6=REFRESH     PF7=SCROLL BACK          PF8=SCROLL FORWARD
PF10=CROSS REF  PF12=TDCJ MENU           CLEAR=EXIT
IE LAST MINUTE RECORDS ARE DISPLAYED
```

EXHIBIT

B-8

37

CASE NO. 1011284D

| | | | |
|---|---|---|---|
| THE STATE OF TEXAS | § | | IN THE 213TH DISTRICT |
| VS. | § | | COURT OF |
| RODNEY ELNESTO SMILEY | § | | TARRANT COUNTY, TEXAS |

## JUDGMENT ON PLEA OF GUILTY OR NOLO CONTENDERE BEFORE COURT
### WAIVER OF JURY TRIAL

| | | | | |
|---|---|---|---|---|
| Judge Presiding | : HON. ROBERT K. GILL | | Date of Judgment | : OCTOBER 26, 2006 |
| Attorney for State District Attorney | : TIM CURRY | | Assistant District Attorney | : SHANE LEWIS |
| Attorney for Defendant | : JOETTA KEENE | | Charging Instrument: | INDICTMENT |

| | |
|---|---|
| Offense Date | Convicted Offense |
| AUGUST 1, 2004 | INJURY TO A CHILD WITH INTENT TO CAUSE BODILY INJURY |
| Degree | Count / Plea |
| 3RD | ELEVEN / GUILTY |

| | |
|---|---|
| Findings on Deadly Weapon | : NONE |
| Terms of Plea Bargain | : 10 YRS IDTDCJ, WAIVE COUNTS ONE THROUGH TEN |
| Plea to Enhancement Paragraph(s) | : NONE |
| Plea to Habitual Paragraph(s) | : HABITUAL OFFENDER NOTICE - WAIVED BEFORE PLEA |
| Findings on Enhancement/ Habitual Paragraph(s) | : NONE |

| | | |
|---|---|---|
| Date Sentence Imposed | : OCTOBER 26, 2006 | Date to Commence : OCTOBER 26, 2006 |

| | |
|---|---|
| Punishment | : COUNT ELEVEN - TEN (10) YEARS |
| Place of Confinement | : INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE |

| | | | |
|---|---|---|---|
| Time Credited | : 260 DAYS | Court Costs | : $253.00 |
| Reparation | : $1,000.00 | Restitution | : NONE |

| | |
|---|---|
| | : RECOMMEND THAT APPOINTED COUNSEL FEES UNDER TEX. CODE OF CRIM. PROC., ANN., ARTICLE 26.05 OF $1,000.00 BE PAYABLE TO AND THROUGH THE DISTRICT CLERK'S OFFICE OF TARRANT COUNTY, TEXAS, AS CONDITION OF PAROLE. |

On this day, set forth above, this cause came for trial and came the State of Texas by its above-named attorney, and the Defendant appeared in person and by the above-named attorney for the Defendant, or, where a Defendant is not represented by counsel, that the Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel; and announced ready for trial, the Defendant having been heretofore arraigned, or having waived arraignment in open court, and having agreed that the testimony may be stipulated in this cause and the Defendant, his counsel, and the State's attorney having agreed in writing in open court to waive a jury in the trial of this cause and to submit this cause to the Court, and the Court having agreed to the same, the said attorney for the State read the instrument charging the offense as shown or the reading of the charging instrument having been waived by the Defendant in open court; the Defendant entered the above shown plea thereto; and it appearing to the Court that the Defendant is mentally competent and the plea is free and voluntary, and the Court having duly admonished the Defendant as to the consequences of such plea, including the range of punishment attached to the offense and the fact that any recommendation of the prosecuting attorney as to punishment is not binding on the Court, yet the Defendant persisted in entering such plea; said plea is by the Court received and now entered of record upon the minutes of the Court, is of the opinion and so finds that the said Defendant is guilty of the offense as confessed and set forth above.

And when shown above, that the charging instrument contains enhancement paragraph(s), which were not waived, and alleges Defendant to have been convicted previously of any felony or offenses for the purpose of enhancement of punishment





EXHIBIT

C38

JUDGEMENT
CERTIFICATE OF THUMBPRINT

CAUSE NO 1011284

THE STATE OF TEXAS

VS.

SMILEY. RODNEY E
COUNTY,TEXAS

IN THE CRIMINAL

DISTRICT COURT D213

TARRANT

Right Thumb*

Defendant's _Right_ hand

THIS IS TO CERTIFY THAT THE FINGERPRINTS ABOVE ARE THE ABOVE-
NAMED DEFENDANT'S FINGERPRINTS TAKEN FOR THE ABOVE STYLED
AND NUMBERED CAUSE.

TAKEN ON THIS _26_ DAY OF _October_ , _2006_

_____
DEPUTY SHERIFF

*Indicate here if print other than defendant's right thumbprints placed in box:

_____Left thumbprint                    _____Left/right index finger

_____Other

**39**

NAME RODNEY ELNESTO SMILEY

ADDRESS 532 CLAIRE CT

ARLINGTON TX 76012

RACE B SEX M AGE 41 DOB 7/12/1964

CASE NO. 1011284 DATE FILED 2/13/2006

CID NO. 0267313

OFFENSE SEXUAL ASLT CHILD (AGG)

DATE 6/1/2003 Habitual

I.P. TERRIKA DYKES

AGENCY Fort Worth PD

OFFENSE NO. 05154991

COURT 213th District Court

INDICTMENT NO. 1011284 ⅅ

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS OF TARRANT COUNTY, TEXAS,

duly elected, tried, empaneled, sworn, and charged to inquire of offenses committed in Tarrant County, in the State of Texas, upon their oaths do present in and to the

## 372nd DISTRICT COURT

of said County that RODNEY ELNESTO SMILEY, hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 1st day of June 2003, did

THEN AND THERE INTENTIONALLY OR KNOWINGLY CAUSE THE PENETRATION OF THE FEMALE SEXUAL ORGAN OF TERRIKA DYKES, A CHILD YOUNGER THAN 14 YEARS OF AGE WHO WAS NOT THE SPOUSE OF SAID DEFENDANT BY INSERTING HIS FINGER INTO HER FEMALE SEXUAL ORGAN,

COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF JUNE, 2003, DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT, ENGAGE IN SEXUAL CONTACT BY TOUCHING THE FEMALE SEXUAL ORGAN OF TERRIKA DYKES, A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT,

COUNT THREE: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF JUNE, 2003, DID THEN AND THERE INTENTIONALLY OR KNOWINGLY CAUSE THE PENETRATION OF THE ANUS OF TERRIKA DYKES, A CHILD YOUNGER THAN 14 YEARS OF AGE WHO WAS NOT THE SPOUSE OF SAID DEFENDANT BY INSERTING HIS FINGER INTO HER ANUS,

COUNT FOUR: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF JUNE, 2003, DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT, ENGAGE IN SEXUAL CONTACT BY TOUCHING THE ANUS OF TERRIKA DYKES, A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT,

COUNT FIVE: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF JULY, 2003, DID THEN AND THERE INTENTIONALLY OR KNOWLINGLY CAUSE THE SEXUAL ORGAN OF, TERRIKA DYKES, A CHILD YOUNGER THAN 14 YEARS OF AGE WHO WAS NOT THE SPOUSE OF SAID DEFENDANT TO CONTACT THE SEXUAL ORGAN OF THE DEFENDANT,

COUNT SIX: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF JULY, 2003,

40

DID THEN AND THERE INTENTIONALLY EXPOSE HIS PENIS TO TERRIKA DYKES, A CHILD YOUNGER THAN 17 YEARS AND NOT HIS SPOUSE, KNOWING SAID CHILD WAS PRESENT, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT,

COUNT SEVEN: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF AUGUST, 2004, DID THEN AND THERE INTENTIONALLY OR KNOWINGLY CAUSE THE PENETRATION OF THE FEMALE SEXUAL ORGAN OF TERRIKA DYKES, A CHILD YOUNGER THAN 14 YEARS OF AGE WHO WAS NOT THE SPOUSE OF SAID DEFENDANT BY INSERTING HIS FINGER IN HER FEMALE SEXUAL ORGAN,

COUNT EIGHT: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF AUGUST, 2004, DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT, ENGAGE IN SEXUAL CONTACT BY TOUCHING THE FEMALE SEXUAL ORGAN OF TERRIKA DYKES, A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT,

COUNT NINE: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF AUGUST, 2004, DID THEN AND THERE INTENTIONALLY OR KNOWINGLY CAUSE THE PENETRATION OF THE ANUS OF TERRIKA DYKES, A CHILD YOUNGER THAN 14 YEARS OF AGE WHO WAS NOT THE SPOUSE OF SAID DEFENDANT BY INSERTING HIS FINGER INTO HER ANUS,

COUNT TEN: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT THE DEFENDANT IN THE COUNTY OF TARRANT AND STATE AFORESAID ON OR ABOUT THE 1ST DAY OF AUGUST, 2004, DID THEN AND THERE INTENTIONALLY, WITH THE INTENT TO AROUSE OR GRATIFY THE SEXUAL DESIRE OF SAID DEFENDANT, ENGAGE IN SEXUAL CONTACT BY TOUCHING THE ANUS OF TERRIKA DYKES, A CHILD YOUNGER THAN 17 YEARS AND NOT THE SPOUSE OF THE DEFENDANT,

HABITUAL OFFENDER NOTICE: AND IT IS FURTHER PRESENTED TO SAID COURT THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF BURGLARY OF A BUILDING, IN THE 297TH CRIMINAL DISTRICT COURT OF TARRANT COUNTY, TEXAS, IN CAUSE NUMBER 0341914D, ON AUGUST 29, 1988, AND, THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES FOR WHICH THE DEFENDANT WAS CONVICTED AS SET OUT ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF BURGLARY OF HABITATION, IN THE 291ST JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS, IN CAUSE NUMBER F94-23105-U, ON MAY 9, 1994,

Count Eleven: And It Is Further Presented In And To Said Court That The Defendant In The County of Tarrant And State Aforesaid On or About The 1st Day of August, 2004, Did Then And There Intentionally with the Intent to Arouse or Gratify the Sexual Or Cause Bodily Injury To Terrika Dykes, A child Younger Than 15 years of Age By Hitting Her with His Hand

Attorney For State

Attorney For Defendant

NAME     RODNEY ELNESTO SMILEY
CASE NO. 1011284
PAGE     3 of 3

Filed (Clerk's use only)

APR 2 6 2006

12:25

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Criminal District Attorney
Tarrant County, Texas
INDICTMENT - ORIGINAL

Foreman of the Grand Jury

42

ID NO....: 03361205   TDC NO: 00693698   PIA NO:  000000
AME......: SMILEY,RODNEY ELNESTO          DOB: 07/12/1964  RACE: B SEX: M
ECEIVED..: 01/30/1995 UNIT..: ND  JOE F GURNEY
ENT BEGN.: 06/28/1994                                                 L1
ET SENT..: 0025Y 00M 00D LEGISLATURE:      73RD     OUT OF CUST.: 1588
IN EXP DT: 04/08/2014    MS CALC CD.: Y            BONUS TIME..:      0
AX EXP DT: 11/02/2023    PAR CALC CD: FLAT & GOOD TDC CALC PAR: 04/07/2007
---------------------------------------------------------------------------
   OFFENSE          MAX. TERM YMD  OFF DATE   SENT DATE CC P COURT/COUNTY
 DESCRIPTION        /SENT BEG                     CU L CAUSE
                    /MIN EXP    /MAX EXP    /PAROLE
                    /OUT OF CUST.
---------------------------------------------------------------------------
 INJURY TO CHILD   0010Y 00M 00D 08/01/2004 10/26/2006 CC G 213 TARRANT
   WIT CAUSE BI       02/08/2006   JAIL GT:Y       1011284D        CNT:11
                     09/21/2010  02/08/2016 04/07/2007 MSCLC:    PRLCL:N

\IL GOOD TIME CREDITED FROM SENTENCE BEGIN DATE
)TH/72ND/73RD  LEGIS: MANDATORY SUPV PROSPECT
)T ELIGIBLE FOR SB1167 PER TDCJ BOARD POLICY
             12/5/06
:MARKS...: 2-8-06:RET'D FROM PAROLE STATUS FROM TARRANT CO W/
           NEW 10YR CONV. OOC 4-4-20. JGT ALLOWED FROM 2-8-06
           ONLY. L1W EFF 2-8-06.
           11-16-06 HW
           REC'D JCN CHANGING REARREST DATE FROM 02-08-06 TO
           01-24-06. CHANGING OOC FROM 4-4-20 TO 4-4-6.
           DENIED HB1649 MIDPOINT.
           KH 12-07-06



EXHIBIT

D

43

```
CSIMF800/INI801              COMMITMENT INQUIRY              05/13/14 10:43:57
INMTCICS/KNA1251 /1FTP   TDCJ-ID NO: 00693698 SIDNO: 03361205
NAME: SMILEY,RODNEY ELNESTO          APPL:      STATUS: A RK VS S3   #OFF: 04
OLD TDC#: 00592793 CNTY CONV: 057                                       73RD
OFF-REC:    2321 PRJ RL: 02-08-2016 REC:    01-30-1995 MAX-TERM:   25Y  0M  0D
PEN-REC: 031.030 MAX-EX: 11-02-2023 BEGIN: 06-28-1994 PAR-ELIG: 01-01-0001
                              INMATE TYPE: ID    HB1433: N   HB1433 VOTE:
DYNAMIC RISK ASSESSMENT:           TYC:        HB1433 MIN EXP:
   OFFCD: 23210000 THEFT PROP O/750 L/20,000
   3DEG                                                                  73RD
   PENAL:031.030  MS:Y PLEA:G CAUSE:F-9402594-PU      CNT:00    OFF:02-08-1994
   CC   CNTY OFF:057   CNTY/CRT:057 291 MAX TERM:   25Y  0M  0D  BEG:06-28-1994
   MIN EXP:05-13-2013 MAX:11-02-2023 PAR ELIG:01-01-0001 SENTENCED:11-28-1994
   HB1433:N  HB1433 VOTE:    HB1433 MIN EXP:                          REST: N
   OFF TDCNO: 00693698                              CTO DATE 01-01-0001
   OFFCD: 13990043 INJURY TO CHILD WIT CAUSE BI
   3DEG                                                                  73RD
   PENAL:022.040  MS:Y PLEA:G CAUSE:1011284D        CNT:11    OFF:08-01-2004
   CC   CNTY OFF:220   CNTY/CRT:220 213 MAX TERM:   10Y  0M  0D  BEG:02-08-2006
   MIN EXP:02-08-2016 MAX:02-08-2016 PAR ELIG:01-01-0001 SENTENCED:10-26-2006
   HB1433:Y  HB1433 VOTE:DMS  HB1433 MIN EXP:04-14-2010                 REST: N
   OFF TDCNO: 00693698                              CTO DATE 01-01-0001
PF7:UP,PF8:DOWN,PF2:TOP OF LIST,OR NEXT REQUEST/TDC _____  OR SID _____
```



EXHIBIT
E-1

44

```
CSIMF800/INI801              COMMITMENT INQUIRY              05/13/14 10:44:05
INMTCICS/KNA1251 /1FTP   TDCJ-ID NO: 00693698 SIDNO: 03361205
 NAME: SMILEY,RODNEY ELNESTO            APPL:      STATUS: A RK VS S3    #OFF: 04
 OLD TDC#: 00592793 CNTY CONV: 057                                      73RD
 OFF-REC:    2321 PRJ RL: 02-08-2016 REC:    01-30-1995 MAX-TERM:   25Y  0M  0D
 PEN-REC: 031.030 MAX-EX: 11-02-2023 BEGIN: 06-28-1994 PAR-ELIG: 01-01-0001
                            INMATE TYPE: ID   HB1433: N  HB1433 VOTE:
 DYNAMIC RISK ASSESSMENT:         TYC:     HB1433 MIN EXP:
    OFFCD: 22090000 BURG OF HABITAT
    1DEG                                                            70TH
    PENAL:030.020  MS:Y PLEA:G CAUSE:F91-31080-P        CNT:00   OFF:04-16-1991
    CC  CNTY OFF:057   CNTY/CRT:057 203 MAX TERM:  15Y   0M  0D   BEG:05-24-1991
    MIN EXP:09-22-2008 MAX:04-01-2012 PAR ELIG:01-01-0001 SENTENCED:06-05-1991
    HB1433:N  HB1433 VOTE:     HB1433 MIN EXP:                      REST: N
    OFF TDCNO: 00592793                          DISCHARGED  04-01-2012
    OFFCD: 22090000 BURG OF HABITAT
    1DEG  ENH                                                       70TH
    PENAL:030.020  MS:Y PLEA:G CAUSE:F91-41655-HP       CNT:00   OFF:04-02-1991
    CC  CNTY OFF:057   CNTY/CRT:057 203 MAX TERM:  15Y   0M  0D   BEG:05-24-1991
    MIN EXP:09-22-2008 MAX:04-01-2012 PAR ELIG:01-01-0001 SENTENCED:06-05-1991
    HB1433:N  HB1433 VOTE:     HB1433 MIN EXP:                      REST: N
    OFF TDCNO: 00592793                          DISCHARGED  04-01-2012
PF7:UP,PF8:DOWN,PF2:TOP OF LIST,OR NEXT REQUEST/TDC _____ OR SID _____
END OF OFFENSES; ALL OFFENSES HAVE BEEN DISPLAYED
```

EXHIBIT

E-2

**45**

CSSUKA4D                 TEXAS DEPARTMENT OF CRIMINAL JUSTICE          05/13/2014
BPPDCICS/1ARW                     NDMS INFORMATION                       14:48:06
SID NUMBER: 03361205        TDCJID NUMBER: 00693698         PIA NUMBER:
NAME: SMILEY,RODNEY ELNESTO


ACTION DATE: 01/14/2013

PRD DATE: 05/12/2013

SIGNATURE DATE: 01/29/2013

ADDITIONAL INFORMATION DEADLINE: 02/28/2013


AD409: N    REG: N


COMMENTS: NOTICE OF INIT DISCRETIONARY MAND. REVIEW AUTOMATICALLY.   (NOTICE OF
DMS)

PF1=HELP     PF3=PREV MENU     PF5=MINUTES     PF12=TDCJ MENU     CLEAR=EXIT
-- REQUESTED MINUTES DETAIL IS DISPLAYED.



46

```
CSSUKA2A            TEXAS DEPARTMENT OF CRIMINAL JUSTICE           05/13/2014
BPPDCICS/1ARW            MINUTES DETAIL INFORMATION                  14.48.29
SID NUMBER: 03361205        TDCJID NUMBER: 00693698        PIA NUMBER: 000000
NAME: SMILEY,RODNEY ELNESTO            PROCESS TYPE: CURRENTLY AN INMATE
ACTION DATE:  04/10/2013                ACTION: DMS   04/01/2014
PAROLE GUIDELINE SCORE: 5            ACTION TYPE: RECORD HAS NO ACTION TYPE
PAROLE BOARD MEMBER      ACTION      PAROLE BOARD MEMBER       ACTION
DAVID GUTIERREZ          DMS  04/01/2014  TROY FOX        DMS    04/01/2014
```

REASONS: 9D1 9D2 1D  2D  5D
SPEC COND:
                            "Z" COUNTIES:                  "A" COUNTY:
COMMENTS:

```
PF1=HELP     PF3=PREV MENU     PF5=MINUTES     PF12=TDCJ MENU     CLEAR=EXIT
-- REQUESTED MINUTES DETAIL IS DISPLAYED.
```



EXHIBIT
G

47



# State Counsel for Offenders

### A Division of Texas Department of Criminal Justice

P.O. Box 4005
Huntsville, TX 77342-4005
(936) 437-5203

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 2 5 2014

TIME_____ 1:46 _____

BY_____ RR _____ DEPUTY

August 20, 2014

Tarrant County District Clerk's Office
401 W. Belknap
Ft. Worth, TX 76196

Re:     *The State of Texas v. Rodney Elnesto Smiley*
        *Cause No. 1011284D in the 213th Judicial District Court of Tarrant County, Texas*

Dear Sir or Madam:

Enclosed, please find original and two copies of Mr. Smiley's Art. 11.07 Application for Writ of Habeas Corpus with reference to Cause No. 1011284D.

Please forward a file stamped copy of this application to the Tarrant County District Attorney's Office as provided in Art. 11.07, Sec. 3. Please return a file-stamped copy of the application to the undersigned in the enclosed stamped envelope.

Thank you for your courtesies regarding this matter.

Sincerely,

/s/ Kenneth Nash
Kenneth Nash
Appellate Section Chief

KNA/lmm
Enclosures

cc:     Rodney Elnuesto Smiley
        TDCJ# 00693698
        Estes Unit
        1100 Highway 1807
        Venus, TX 76084

**48**



# State Counsel for Offenders

### A Division of Texas Department of Criminal Justice

P.O. Box 4005
Huntsville, TX 77342-4005
(936) 437-5203

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 25 2014

TIME _____ 1:46 _____
BY _____ RR _____ DEPUTY

August 20, 2014

Tarrant County District Clerk's Office
401 W. Belknap
Ft. Worth, TX 76196

Re:    *The State of Texas v. Rodney Elnesto Smiley*
       *Cause No. C-213-010241-1011284-A in the*
       *213th Judicial District Court of Tarrant County, Texas*

Dear Sir or Madam:

Enclosed, please find original and two copies of Applicant's Memorandum in Support of Application for a Writ of Habeas Corpus with reference to Cause Number *C-213-010241-1011284-A*.

By copy of this letter, I am forwarding a copy of same to Mr. Joe Shannon, Jr., attorney for the state. Please return a file-stamped copy of the memorandum to the undersigned in the enclosed stamped envelope.

Thank you for your courtesies regarding this matter. If there are any questions, please contact undersigned counsel.

Sincerely,

/s/ Kenneth Nash
Kenneth Nash
Appellate Section Chief
Ph: (936) 437-5291
E-Mail Address: Kenneth.Nash@tdcj.texas.gov

KNA/jma
Enclosures

8/25/2014
per phone call
with Kenneth Nash,
These memorandums
are supporting Documents
for the new "B"
WRIT. cindy cohen

1 | P a g e    **49**

cc:    Joe Shannon, Jr.
Tarrant County Criminal District Attorney
Tim Curry Criminal Justice Center
401 West Belknap
Fort Worth, TX 76196

cc:    Mr. Rodney Elnesto Smiley
TDCJ# 00693698
Estes Unit
1100 Highway 1807
Venus, TX 76084

State Counsel for Offenders
P.O. Box 4005
Huntsville, TX 77342
ATTN: Appellate Section

Priority Mail
ComBasPrice

U.S. POSTAGE >> PITNEY BOWES

ZIP 77320
02 1W    $ 005.44
0001387404 AUG 21 2014



FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 25 2014

TIME_____
BY_____ DEPUTY

Tarrant County District Clerk's Office
401 W. Belknap
Ft. Worth, TX 76196



PRIORITY® MAIL
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107, January 2008

Writ Number: C-213-010293-1011284-B

## 213TH DISTRICT COURT

OF

TARRANT COUNTY, TEXAS

EX PARTE

### *RODNEY ELNESTO SMILEY*

### *WAIVER OF SERVICE*

Now comes Joe Shannon, Jr., Criminal District Attorney of Tarrant County, Texas and hereby acknowledges that he has this date, **August 25, 2014**, received from the District Clerk a copy of the petition for Writ of Habeas Corpus filed in the above entitled and numbered cause and he hereby waives delivery to him of said petition by certified mail.

It is further acknowledged that the answer to this petition, if any, will be filed within fifteen (15) days from this date.

*JOE SHANNON, JR.*
*CRIMINAL DISTRICT ATTORNEY*

*TARRANT COUNTY, TEXAS*

BY _____

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

August 25, 2014

Time _____ 3:24 _____
By _____ AR _____ , Deputy

52

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 09 2014

TIME_____

BY_____ DEPUTY

C-213-010293-1011284-B

| | | |
|---|---|---|
| EX PARTE | § | IN THE 213th JUDICIAL |

EX PARTE § IN THE 213th JUDICIAL

§

§ DISTRICT COURT OF

§

RODNEY ELNESTO SMILEY § TARRANT COUNTY, TEXAS

## STATE'S RESPONSE TO APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW THE STATE OF TEXAS, by and through her Tarrant County Criminal District Attorney, and in opposition of the Application for Writ of Habeas Corpus respectfully states the following to the Court based on its information and belief:

## I. HISTORY OF THE CASE

The applicant, RODNEY ELNESTO SMILEY ("Applicant"), pled guilty, pursuant to a plea agreement, to the third degree felony offense of injury to a child with intent to cause bodily injury. *See* Judgment, No. 1011284D. In accordance with the plea agreement, the State waived the habitual offender notice and the trial court sentenced him to ten years confinement in the Texas Department of Criminal Justice – Institutional Division. *See* Judgment.

SCANNED

53

Applicant did not appeal his conviction. *See* Criminal Docket Sheet, No. 1011284D.

Applicant's first application for writ of habeas corpus was dismissed for non-compliance on August 6, 2014. *See Ex parte Smiley*, WR-31,454-02, No. C-213-010241-1011284-A (Tex. Crim. App. Aug. 6, 2014) (not designated for publication).

## II. APPLICANT'S ALLEGATIONS

Applicant alleges his confinement is illegal because (1) his rights to due process was violated when TDCJ's notice was given and BPP's vote was taken more than 2 years after he became eligible for mandatory supervision release and (2) his due course of law rights were violated when TDCJ's notice was given and BPP's vote was taken more than 2 years after he became eligible for mandatory supervision. *See* Application, p. 6-9.

## III. NECESSITY FOR AN EVIDENTIARY HEARING & EXPANSION OF THE RECORD

There is no need for an expansion of the record. Applicant's grounds for relief can be resolved based on the record before this Court. Applicant need **NOT** be brought back to Tarrant County for a hearing.

**54**

## IV. ARGUMENT AND AUTHORITIES

### A. General Writ Law

In a habeas corpus proceeding, the burden of proof is on the applicant. *Ex parte Rains*, 555 S.W.2d 478 (Tex. Crim. App. 1977). An applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001). In order to prevail, the applicant must present facts that, if true, would entitle him to the relief requested. *Ex parte Maldonado*, 688 S.W.2d 114 (Tex. Crim. App. 1985). Relief may be denied if the applicant states only conclusions, and not specific facts. *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000). In addition, an applicant's sworn allegations alone are not sufficient to prove his claims. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

### B. Applicant's first and second grounds for relief should be DISMISSED AS MOOT because he has already been reviewed, and denied, twice for discretionary mandatory supervision since the alleged error.

Applicant alleges that he should have been considered for discretionary mandatory supervision in 2010, but he wasn't. *See* Application, p. 6-9. Applicant admits that he was, however, considered for, and denied, release to discretionary mandatory supervision in April, 2013. *See* Application, p. 7, 9; Memorandum, Exhibits B-1, G. Applicant was also considered for, and denied, release discretionary

mandatory supervision in Ferbruary, 2014. *See* Attachment A: Parole Information Review, No. 00693698.

While Applicant may have had a claim from 2010 to 2012, the relief to which he would have been entitled was immediate review for mandatory supervision. *See, e.g., Ex parte Retzlaff*, 135 S.W.3d 45, 51 (Tex. Crim. App. 2004) ("Given the repeated failures to provide adequate and timely notice to this particular applicant, we conclude that applicant is entitled to the specific habeas corpus relief that he has requested – a new review 'as soon as possible.'"). However, as Applicant has been reviewed, and denied, release to mandatory supervision twice since then, Applicant's claim that he was not timely considered for release to mandatory supervision is now moot. *See, e.g., Ex parte Ramos*, 2004 WL 2241000, *2 (Tex. Crim. App. Sept. 29, 2004) (not designated for publication) ("His constitutional claim, though previously valid, is now moot. Accordingly, we dismiss the application").[1]

Applicant's grounds should be **DISMISSED AS MOOT**.

---

[1] Because unpublished opinions "must not be cited as authority," this case is included only for precedential value.

## V. CONCLUSION

Wherefore, premises considered, the State prays that this Court recommend that Applicant's application for writ of habeas corpus be **DISMISSED AS MOOT**.

Respectfully submitted,

JOE SHANNON, JR.
Criminal District Attorney
Tarrant County

Andréa Jacobs
State Bar No. 24037596
401 West Belknap
Fort Worth, TX 76196-0201
Phone:        817/884-1687
Facsimile:   817/884-1672

## CERTIFICATE OF SERVICE

A true copy of the above has been mailed to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 on this the 9th day of September, 2014.

Andréa Jacobs

## CERTIFICATE OF COMPLIANCE

I certify that the total number of words in this State's Response, combined with the accompanying State's Proposed Findings of Fact and Conclusions of Law, is **1818** words as determined by Microsoft Office Word 2010.

Andréa Jacobs

**57**

  

**Name:** SMILEY,RODNEY ELNESTO          **SID Number:** 03361205          **TDCJ Number:** 00693698

# Parole Review Information

## Parole Review Status

**Not in Parole Review**

The offender is currently not in the review process.

## Last Parole Decision

**Denied on 02/18/2014**

DMS (02/2015)- Deny release to Discretionary Mandatory Supervision and set for next review.
Denial reason(s): 9D1, 9D2, 1D, 2D, 5D

* Note: One or more of the components indicated in each paragraph may apply, but only one is required for denial (D).

**1D CRIMINAL HISTORY** - THE RECORD INDICATES THAT THE INMATE HAS REPEATEDLY COMMITTED CRIMINAL EPISODES OR HAS A PATTERN OF SIMILAR OFFENSES THAT INDICATES A PREDISPOSITION TO COMMIT CRIMINAL ACTS WHEN RELEASED; OR THE RECORD INDICATES THAT THE INMATE IS A LEADER OR ACTIVE PARTICIPANT IN GANG OR ORGANIZED CRIMINAL ACTIVITY; OR THE RECORD INDICATES A JUVENILE OR AN ADULT ARREST OR INVESTIGATION FOR FELONY AND MISDEMEANOR OFFENSES.

**2D NATURE OF OFFENSE** - THE RECORD INDICATES THAT THE INMATE COMMITTED ONE OR MORE VIOLENT CRIMINAL ACTS INDICATING A CONSCIOUS DISREGARD FOR THE LIVES, SAFETY, OR PROPERTY OF OTHERS; OR THE INSTANT OFFENSE OR PATTERN OF CRIMINAL ACTIVITY HAS ELEMENTS OF BRUTALITY, VIOLENCE, OR CONSCIOUS SELECTION OF VICTIM'S VULNERABILITY SUCH THAT THE INMATE POSES A CONTINUING THREAT TO PUBLIC SAFETY; OR THE RECORD INDICATES USE OF A WEAPON.

**5D ADJUSTMENT DURING PERIODS OF SUPERVISION** - THE RECORD INDICATES UNSUCCESSFUL PERIODS OF SUPERVISION ON PREVIOUS PROBATION, PAROLE, OR MANDATORY SUPERVISION THAT RESULTED IN INCARCERATION, INCLUDING PAROLE-IN-ABSENTIA REVOCATIONS.

**9D1 DISCRETIONARY MANDATORY SUPERVISION** - THE RECORD INDICATES THAT THE



 

INMATE'S ACCRUED GOOD CONDUCT TIME IS NOT AN ACCURATE REFLECTION OF THE INMATE'S POTENTIAL FOR REHABILITATION.

**9D2 DISCRETIONARY MANDATORY SUPERVISION** - THE RECORD INDICATES THAT THE INMATE'S RELEASE WOULD ENDANGER THE PUBLIC.

# Next Parole Review Date

**02/2015**

Back

---

*The Texas Department of Criminal Justice updates this information regularly to ensure that it is complete and accurate, however this information can change quickly. Therefore, the information on this site may not reflect the true current location, status, scheduled termination date, or other information regarding an offender.*

*For questions and comments, you may contact the Texas Department of Criminal Justice, at (936) 295-6371 or <u>webadmin@tdcj.state.tx.us</u>. This information is made available to the public and law enforcement in the interest of public safety. Any unauthorized use of this information is forbidden and subject to criminal prosecution.*

---

<u>New Offender Search</u>   <u>TDCJ Home Page</u>

**59**

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
SEP 09 2014
TIME_____
BY_____ DEPUTY

| | | |
|---|---|---|
| EX PARTE | § | IN THE 213ᵗʰ JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| RODNEY ELNESTO SMILEY | § | TARRANT COUNTY, TEXAS |

## STATE'S PROPOSED MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW

The State proposes the following Memorandum, Findings of Fact and Conclusions of Law regarding the issues raised in the present Application for Writ of Habeas Corpus.

## MEMORANDUM

The applicant, RODNEY ELNESTO SMILEY ("Applicant"), alleges that he is being unlawfully confined (1) his rights to due process was violated when TDCJ's notice was given and BPP's vote was taken more than 2 years after he became eligible for mandatory supervision release and (2) his due course of law rights were violated when TDCJ's notice was given and BPP's vote was taken more than 2 years after he became eligible for mandatory supervision. *See* Application, p. 6-9.

In light of Applicant's contentions and the evidence presented in the Writ Transcript, the Court should consider the following proposed findings of fact and conclusions of law:

SCANNED

**60**

# FINDINGS OF FACT

*General Facts*

1. Applicant pled guilty, pursuant to a plea agreement, to the third degree felony offense of injury to a child with intent to cause bodily injury. *See* Judgment, No. 1011284D.

2. In accordance with the plea agreement, the State waived the habitual offender notice and the trial court sentenced him to ten years confinement in the Texas Department of Criminal Justice – Institutional Division. *See* Judgment.

3. Applicant did not appeal his conviction. *See* Criminal Docket Sheet, No. 1011284D.

4. Applicant's first application for writ of habeas corpus was dismissed for non-compliance on August 6, 2014. *See Ex parte Smiley*, WR-31,454-02, No. C-213-010241-1011284-A (Tex. Crim. App. Aug. 6, 2014) (not designated for publication).

*Mandatory Supervision*

5. Applicant alleges that he was not timely reviewed for release to mandatory supervision in 2010. *See* Application, p. 6-9.

6. Applicant was reviewed for release to mandatory supervision in April, 2013. *See* Application, p. 7, 9; Memorandum, Exhibits B-1 and G.

7. Applicant was reviewed for release to mandatory supervision in February, 2014. *See* State's Response, Attachment A: Parole Information Review, TDCJ-ID No. 00693698.

8. Applicant was denied release to mandatory supervision in 2013 and 2014. *See* Application, p. 7, 9; Memorandum, Exhibits B-1 and G; State's Response, Attachment A.

9. Applicant is set for review for release to discretionary mandatory supervision in February, 2015. *See* State's Response, Attachment A, p. 1, 2.

10. Because Applicant has been reviewed for release to mandatory supervision twice since the date he alleges he was not timely reviewed, Applicant's claims are **MOOT**.

## CONCLUSIONS OF LAW

*General Law*

1. In a habeas corpus proceeding, the burden of proof is on the applicant. *Ex parte Rains*, 555 S.W.2d 478 (Tex. Crim. App. 1977). An applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001).

2. Relief may be denied if the applicant states only conclusions, and not specific facts. *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000). In addition, an applicant's sworn allegations alone are not sufficient to prove his claims. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

*Mandatory Supervision*

3. "Given the repeated failures to provide adequate and timely notice to this particular applicant, we conclude that applicant is entitled to the specific habeas corpus relief that he has requested – a new review 'as soon as possible.'" *Ex parte Retzlaff*, 135 S.W.3d 45, 51 (Tex. Crim. App. 2004).

4. Because Applicant claims he was not given a timely review for release to mandatory supervision, the relief would be a new review as soon as possible.

5. Because Applicant has been afforded two reviews for release to mandatory supervision since the date he complains he was denied timely review, his claims are **MOOT**.

6. This Court recommends that Applicant's first ground for relief be **DISMISSED AS MOOT**.

7. This Court recommends that Applicant's second ground for relief be **DISMISSED AS MOOT**.

**62**

WHEREFORE, the State prays that this Court adopt these Proposed Findings of Fact and Conclusions of Law and recommend that Applicant's application be **DISMISSED AS MOOT**.

Respectfully submitted,

JOE SHANNON, JR.
Criminal District Attorney
Tarrant County

Andréa Jacobs
Assistant District Attorney
State Bar No. 24037596
401 West Belknap
Fort Worth, TX 76196-0201
Phone:    817/884-1687
Facsimile:  817/884-1672

## CERTIFICATE OF SERVICE

A true copy of the above has been mailed to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 on or before the 9TH day of September, 2014.

Andréa Jacobs

## CERTIFICATE OF COMPLIANCE

The total number of words in this State's Proposed Findings of Fact and Conclusions of Law, combined with any State's Response, is **1818** words as determined by the word count feature of Microsoft Office Word 2010.

Andréa Jacobs

4

**63**

C-213-010293-1011284-B

EX PARTE § IN THE 213th JUDICIAL
§
§ DISTRICT COURT OF
§
RODNEY ELNESTO SMILEY § TARRANT COUNTY, TEXAS

## ORDER

The Court adopts the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommends that the relief RODNEY ELNESTO SMILEY ("Applicant") requests be **DISMISSED AS MOOT**. The Court further orders and directs:

1.    The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2.    The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 (or to Applicant's most recent address), and to the appellate section of the District Attorney's Office.

SIGNED AND ENTERED this _____ day of _____, 2014.

_____
JUDGE PRESIDING

**64**

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

SEP 18 2014

TIME_____ 8:05

BY_____ CDL _____ DEPUTY

C-213-010293-1011284-B

| | | |
|---|---|---|
| EX PARTE | § | IN THE 213ᵗʰ JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| RODNEY ELNESTO SMILEY | § | TARRANT COUNTY, TEXAS |

## ORDER

The Court adopts the State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommends that the relief RODNEY ELNESTO SMILEY ("Applicant") requests be **DISMISSED AS MOOT.** The Court further orders and directs:

1. The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2. The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Rodney Elnesto Smiley, by and through his attorney of record, Hon. Kenneth Nash, at State Counsel for Offenders, P.O. Box 4005, Huntsville, Texas 77342 (or to Applicant's most recent address), and to the appellate section of the District Attorney's Office.

SIGNED AND ENTERED this _16th_ day of _September_____, 2014.

_____
JUDGE PRESIDING

**65**

Certified True Copy

THE STATE OF TEXAS                                          §

COUNTY OF TARRANT                                           §

I, Thomas A. Wilder, Clerk of the District Courts of Tarrant County, Texas, do hereby certify that the above and foregoing is a true and correct copy of ALL PROCEEDINGS HAD.

In Writ Number:   **C-213-010293-1011284-B**

EX PARTE:  **RODNEY ELNESTO SMILEY**
VS.
THE STATE OF TEXAS

as the same appears on the file and/or record in my said office.

GIVEN UNDER MY HAND and seal of Said Court at office in the City of Fort Worth, Tarrant County, Texas, this the _25_, day of _September_ A.D. _2014_

_____THOMAS A. WILDER_____
CLERK, DISTRICT COURTS, TARRANT COUNTY, TEXAS

BY _____
Deputy

**66**